

**IN THE COURT OF CRIMINAL APPEALS**
**OF TEXAS**

**NO. PD-010-07**

**SHERIFF K. AZEEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE FOURTEENTH COURT OF APPEALS**
**HARRIS COUNTY**

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. MEYERS, J., did not participate.

**O P I N I O N**

Although the charging instrument in this case alleged a misdemeanor offense in the

express terms of Section 38.10 of the Texas Penal Code,[1] the Fourteenth Court of Appeals

---

[1]    TEX. PENAL CODE § 38.10(a) ("A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release."). An offense under this provision is a Class C misdemeanor where, as here, the offense for which the person was required to appear (speeding) is punishable by fine only. *Id*., § 38.10(e). Therefore, punishment could not exceed a fine of $500. *See* TEX. PENAL CODE § 12.23.

declared that the appellant was actually prosecuted and convicted under Section 543.009 of the Texas Transportation Code.[2] However, the jury assessed a punishment that, while it was comfortably within the maximum fine permitted under the Penal Code provision, far exceeded the permissible maximum fine under the Transportation Code provision. We granted the appellant's petition for discretionary review in order to sort out this anomaly.[3] We will reverse the judgment of the court of appeals.[4]

## FACTS AND PROCEDURAL POSTURE

On June 19, 2003, the appellant was pulled over by a Houston police officer and issued a speeding citation. By signing the citation, the appellant promised to appear in Municipal Court No. 15 on July 21, 2003. He failed to appear, and was charged by complaint with "unlawfully and knowingly fail[ing] to appear . . . in accordance with the terms of his release after having been lawfully released from custody on condition that he subsequently appear

---

[2] TEX. TRANSP. CODE § 543.009(b) ("A person who wilfully violates a written promise to appear in court, given as provided by this sub-chapter, commits a misdemeanor regardless of the disposition of the charge on which the person was arrested."). An officer who pulls a speeder over is required to issue him a citation and release him, so long as he promises to appear. TEX. TRANSP. CODE §§ 543.004(a)(1) & 543.005. The misdemeanor offense of failure to appear as promised as per the conditions of the speeding citation is specifically spelled out in the Transportation Code as a fine of no less than $1 and no more than $200. See TEX. TRANSP. CODE § 542.401. Thus, the maximum fine for this offense is considerably lower than the maximum fine for the penal code violation.

[3] See TEX. R. APP. P. 66.3(f).

[4] Azeez v. State, 203 S.W.3d 456, 460 (Tex. App.—Houston [14th] 2006).

in said court."[5] The appellant was tried a year later for this offense in Houston Municipal Court No. 8, and was convicted by a jury and fined $400. He appealed his conviction to the County Criminal Court at Law No. 12 of Harris County, which affirmed his conviction. He next appealed his conviction to the Fourteenth Court of Appeals, which likewise affirmed his conviction, albeit "for different reasons" than those given by the County Criminal Court at Law.[6]

On the first day of his trial in municipal court, before jury selection commenced, the appellant orally moved to quash the complaint, arguing that, whereas it charged him with an offense in the express terms of the Penal Code provision, he should instead have been charged under the Transportation Code provision, which he contended is "the more specific" provision. The city prosecutor responded that the complaint had not charged the appellant under *either* of these provisions, but had instead charged him with a violation of City of Houston Ordinance 16-47.[7] The appellant answered that he could not be charged under the ordinance because the city "cannot legislate in areas there is a controlling State law, so that's void – even if he is under that ordinance." Alternatively, he argued (as we understand him)

---

[5] This language expressly tracks the language of Section 38.10(a) of the Penal Code.

[6] *Id.* at 460.

[7] HOUSTON, TEX. ORDINANCES § 16-47 ("It shall be unlawful for any person knowingly to fail to appear for the trial of any charge against the person pending in the municipal courts of the city."). This offense is punishable by "a fine not exceeding $500.00; provided, however, that no penalty shall be greater or less than the penalty provided for the same or a similar offense under the laws of the state." HOUSTON, TEX. ORDINANCES § 1-6(a).

that, in view of the city ordinance, he should not have been charged by a complaint that seemed to be couched in terms of a Penal Code provision. Either way, he maintained, he should not have been charged with an offense under Section 38.10(a) of the Penal Code, as the complaint apparently had done. The trial court denied his motion to quash.

Events at trial seemed to bear out the appellant's claim that he had been charged under the Penal Code offense. During voir dire, in testing the qualification of prospective jurors, the appellant inquired whether they could all consider assessing punishment within the range of a fine between $1 and $500–a range that is consistent with the Penal Code and city ordinance offenses, but inconsistent with the range of punishment for the Transportation Code offense. At the close of the evidence, the appellant again complained, this time in the context of a motion for directed verdict, that "it's not clear in the Complaint which offense the Defendant is charged with." It was apparently clear enough to the trial judge, however, when he came to issue his written charge to the jury. There, without objection from either party, the trial court expressly set out the offense with which the appellant had been charged in terms of Section 38.10(a) of the Penal Code, and authorized a fine of up to $500.[8]

During her final summation to the jury, the prosecutor read out loud to the jury part

---

[8] The charge instructed the jury that "[o]ur statute provides that a person lawfully released from custody with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release. Any person who violates the statute shall upon conviction be fined not more than Five Hundred Dollars ($500.00)." The application paragraph then instructed the jury, in the same terms as had been set out in the complaint and which tracked the statutory language, to convict the appellant should it find he committed the offense.

of the speeding citation that the appellant had signed, containing a warning that in the event he should fail to appear as promised, a warrant would issue for his arrest and he would be subject to an "ADDITIONAL CHARGE FOR FAILURE TO APPEAR WITH A FINE OF $200." She then urged the jury to "[a]ssess what fine you deem appropriate." The jury quickly found the appellant guilty and assessed a fine of $400. The appellant filed a motion for new trial in which he argued, *inter alia*, that the trial court had erred in failing to grant his motion to quash the complaint on the basis that it had charged him with the broad Penal Code offense rather than the more specific offense under the Transportation Code. The trial court denied the motion. The appellant reiterated this argument in his appeal to the County Criminal Court at Law, which ruled in a one-page opinion that he had "waived" this and all of his other challenges to the complaint because he had "made his objections after the start of voir dire."

The court of appeals likewise affirmed the appellant's conviction, but eschewed the County Criminal Court at Law's procedural-default rationale in favor of a ruling on the merits of the appellant's claim.[9] The court of appeals held that the complaint *did* charge the appellant with the Transportation Code offense,[10] and did *not* charge him under either the city ordinance or the Penal Code provision.[11] We believe that in so holding, however, the court

---

[9] *Azeez v. State*, *supra*, at 464-65.

[10] *Id*. at 462-64.

[11] *Id*. at 464-65.

of appeals erred in two significant respects. First, in holding that the appellant was actually charged with the Transportation Code offense, the court of appeals ignored 1) the express language of the complaint itself, 2) the fact that the court's charge instructed the jury to convict the appellant (if at all) under the express language of the Penal Code provision, and 3) the fact that the jury was authorized to, and did in fact, assess a fine in excess of that which is permitted for the Transportation Code offense. Second, in the process of holding that the Transportation Code provision and the Penal Code provision are not *in pari materia*, the court of appeals misconstrued the scope of Section 38.10(a) of the Penal Code. We hold that the two provisions should, in fact, be construed *in pari materia*, and that the trial court erred to allow the appellant to be prosecuted and punished under the Penal Code provision instead of the Transportation Code provision.

## ANALYSIS

### Penal Code or Transportation Code?

The court of appeals held that the complaint was sufficient to allege every element of the Transportation Code offense.[12] While we do not take issue with this proposition, it does not necessarily follow that it was in fact the Transportation Code offense that appellant was charged with, to the exclusion of either the city ordinance or the Penal Code provision. With respect to the former, the court of appeals concluded that the complaint did not allege an offense under Section 16-47 of the Houston City Ordinances because it alleged elements not

---

[12] *Id*. at 462-64.

necessary to state an offense under that provision, and did not conclude with the phrase, "Contrary to said ordinance," as is permissible in complaints that charge only city ordinance violations.[13] We would add to these observations that the complaint also did not allege that the appellant failed to appear for the "trial" of a charge pending in municipal court–only that he failed to appear in municipal court according to the terms upon which he had been released (without specifying what those terms were or setting out the citation *in haec verba*).[14] We therefore agree with the court of appeals that, notwithstanding the State's persistent assertions during trial and in its various appellate briefs, the complaint did not give the appellant sufficient notice of (and may not even have been adequate to allege) a violation of the city ordinance.

But we reject the court of appeals's conclusion that the complaint clearly charged the appellant with the Transportation Code offense to the exclusion of the Penal Code offense. If anything, the opposite is more accurate. The language of the complaint tracked Section 38.10(a) of the Penal Code word for word, whereas it merely paraphrased the elements necessary to charge an offense under the Transportation Code. Moreover, the complaint was not so clear in charging the Transportation Code offense that it sufficed to alert the trial court that it should instruct the jury that it could convict, and, more critically, punish the appellant

---

[13]

    *Id*. at 464. *See* TEX. CODE CRIM. PROC. art. 45.019(a)(7) ("if the offense charged is an offense only under a municipal ordinance, [the complaint] may also conclude with the words 'Contrary to the ordinance'.").

[14]

    *See* note 7, *ante.*

under *that* offense, rather than Section 38.10(a) of the Penal Code. Indeed, were it truly the case, as the court of appeals concluded, that the appellant was actually tried for and convicted of the Transportation Code offense, then the $400 fine the jury assessed and the trial court imposed would be patently illegal, because it was in excess of the maximum ($200) authorized by law. The appellant could complain of such an illegality in his sentencing at any stage of appellate and post-conviction proceedings.[15]

Still, the court of appeals believed that the appellant could *not*, in fact, have been charged with the offense of failing to appear under Section 38.10(a) of the Penal Code.[16] This perception is based upon a misreading of a portion of the relevant statute. The court of appeals opined:

> Section 38.10 of the Penal Code applies to persons who are in custody pursuant to a court order. * * * All of the elements of section 38.10 are included in the [appellant's] complaint, but the definition of custody in [Chapter 38 of the Penal Code] specifically limits section 38.10 to those situations when a person is under arrest pursuant to a court order of this state or another state or when a person is under restraint by an agent or employee of a facility, such as a jail or prison. *See* TEX. PENAL CODE ANN. § 38.01(1) (Vernon 2003).[17]

The court of appeals went on to conclude that, because the appellant was arrested for speeding rather than pursuant to a court order, Section 38.10(a) could not apply to make his failure to

---

[15] *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003).

[16] *Azeez v. State*, *supra*, at 464-65.

[17] *Id.*

appear unlawful. Because the Penal Code provision was not available to charge the appellant, the court of appeals seems to have reasoned, he must have been charged under the Transportation Code provision instead. We reject this reasoning.

The court of appeals's logic proceeds upon the premise that only an arrest that is based upon a court order can lead to the kind of "custody" that is contemplated in Section 38.10(a) of the Penal Code. The court of appeals derived this premise from the definition of custody found in Section 38.01(1)(A) of the Penal Code, which reads as follows:

In this chapter:

(1) "Custody" means:

(A) under arrest by a peace officer or under restraint by a public servant pursuant to an order of a court of this state or another state of the United States[.]

The court of appeals construed this definition to mean that, before it can constitute "custody" for purposes of Chapter 38 of the Penal Code, a peace officer's arrest of an individual must occur "pursuant to an order of a court . . . ." But this construction is correct only if it can be said that this prepositional phrase modifies both phrases that precede it, namely, "under arrest by a peace officer" *and* "under restraint by a public servant." Because of a lack of punctuation, it is unclear from the face of the statute whether it does or not.

We have encountered just this kind of ambiguity before, in *Ludwig v. State*.[18] There we observed that "[g]enerally the presence of a comma separating a modifying clause in a

_____

[18] 931 S.W.2d 239 (Tex. Crim. App. 1996).

statute from the clause immediately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent one."[19] Consistent with this convention of punctuation (and assuming, as we did in *Ludwig*, that it applies equally to phrases as clauses), if the court of appeals's construction of the statute is correct, we would expect the definition of custody to be punctuated as follows:

> under arrest by a peace officer or under restraint by a public servant, pursuant to an order of a court of this state or another state of the United States;

On the other hand, in *Ludwig* we also identified another punctuation convention, that "[g]enerally, a comma should precede a conjunction connecting two coordinate clauses or phrases in a statute in order to prevent the following qualifying phrases from modifying the clause preceding the conjunction."[20] Following this convention, if the court of appeals's construction of the definition of custody is *not* the one the Legislature intended, we would expect it to be punctuated as follows:

> under arrest by a peace officer, or under restraint by a public servant pursuant to an order of a court of this state or another state of the United States.

Unfortunately, the statutory language is not punctuated in either of these ways, and we cannot tell from the plain language of the statute which meaning was intended. As in *Ludwig*, we must go beyond the language of the statute.

In construing the Penal Code, we are authorized to consider, *inter alia*, both the object

---

[19] *Id*. at 241. For this proposition we cited 82 C.J.S. Statutes § 334 (1953), at 672.

[20] *Id*. at 242, also citing 82 C.J.S., *supra*.

sought to be obtained and the consequences of a particular construction.[21] We do not think that the court of appeals's limited construction of the definition of custody comports with the intent of the legislators who enacted Chapter 38 of the Penal Code. When the definition of custody was first enacted in Section 38.01 with the advent of the present Penal Code in 1973, the Practice Commentary observed: "'Custody' is defined as restraint by a public servant pursuant to court order or arrest by a peace officer."[22] As thus paraphrased, the definition is unambiguous, and does not require that arrest by a peace officer be authorized by a court order to constitute custody for purposes of Chapter 38.

This definition is consistent with the Legislature's use of the term in, *e.g.*, current Section 38.06(a) of the Penal Code, which makes it an offense to escape from "custody":

> (A) A person commits an offense if he escapes from custody when he is:
>
> (1) under arrest for, charged with, or convicted of an offense; or
>
> (2) in custody pursuant to a lawful order of a court.

If the court of appeals's construction of "custody" were correct, then subsections (a)(1) and (a)(2) would be redundant, at least insofar as a person might "escape from custody when he is . . . under arrest." For if "custody . . . under arrest" meant, by definition, "arrest . . . pursuant to a lawful court order," as the court of appeals believed, then every escape while

---

[21] TEX. GOV'T CODE §§ 311.023(1) & (5) (Code Construction Act).

[22] *See* TEX. PENAL CODE § 38.07 cmt. (Vernons 1974).

"under arrest" would *also* be covered by Section 38.06(a)(2), because every arrest would have to be (in order to constitute "custody" under Section 38.01) pursuant to a court order. It is clear to us that the Legislature intended no such redundancy, but instead, intended that it should be an offense for a person to escape from a peace officer who has placed him under arrest, regardless of whether that officer had a warrant or other court order.[23] For these reasons we hold that the court of appeals erred to conclude that, in order to be "under arrest" for purposes of the definition of "custody" under Chapter 38 of the Penal Code, a suspect would have to be arrested pursuant to a court order, and therefore the appellant must have been charged with the Transportation Code offense.

### The Penal Code Offense

Section 543.001 of the Transportation Code provides that "[a]ny peace officer may arrest without warrant a person found committing a violation of this subtitle."[24] A peace officer may, and in the case of a speeding violation, must, offer that person the option of signing a written notice and promise to appear in court in lieu of an immediate appearance

---

[23] In 1997, Subsections 9.01(a) and (b) of the Penal Code were amended to adopt the same definition of "custody" as that contained in Section 38.01(1). *See* Acts 1997, 75th Leg., ch. 293, §2, pp. 1308-09, eff. Sept. 1, 1997. Section 9.52 of the Penal Code makes justifiable the use of force "to prevent the escape of an arrested person from custody . . . when the force could have been employed to effect the arrest under which the person is in custody[.]" TEX. PENAL CODE § 9.52. We doubt that the Legislature intended that this defensive issue should be available only to peace officers who effectuated the arrest "pursuant to an order of a court."

[24] TEX. TRANSP. CODE § 543.001. *See Boyett v. State*, 487 S.W.2d 357, 359 (Tex. Crim. App. 1972); *Nite v. State*, 882 S.W.2d 587, 591-92 (Tex. App.—Houston [1st] 1994, no pet.).

before a magistrate.[25]  If the person signs the promise to appear, then he is immediately released from detention.[26]  If the person refuses to sign a promise to appear, he shall be immediately taken before a magistrate.[27]  Under these provisions, is a person "under arrest" for purposes of Section 38.01(1)(A) of the Penal Code, up to the point that he signs the promise to appear and is released, such that he can be prosecuted for failure to appear under Section 38.10(a) of the Penal Code?  We have never addressed this precise question, and our precedents are ambiguous with respect to the exact nature and scope of the detention that occurs when a motorist is pulled over for a traffic violation and agrees to sign a citation and promise to appear to answer for the offense.

Courts have often declared, under predecessor provisions to the Transportation Code, that a peace officer may "arrest" anyone he witnesses committing any traffic offense "[e]xcept for the offense of speeding."[28]  But, strictly speaking, it is not true that the Transportation Code does not authorize the "arrest" of speeders.  It just does not permit speeders to be "arrested" for any longer than it takes for the arresting officer to issue a citation (assuming

---

[25]

TEX. TRANSP. CODE §§ 543.003, 543.004(a)(1) & 543.005.

[26]

*Id.* § 543.005.

[27]

*Id.* § 543.002(a)(2).

[28]

*See Tores v. State*, 518 S.W.2d 378, 380 (Tex. Crim. App. 1975);  *Christian v. State*, 592 S.W.2d 625, 628-29 (Tex. Crim. App. 1980);  *Vicknair v. State*, 751 S.W.2d 180, 189 n.3 (Tex. Crim. App. 1988) (Opinion on Appellant's motion for rehearing);  *Coleman v. State*, 45 S.W.3d 175, 179 n.2 (Tex. App.—Houston [1st] 2001, pet. ref'd);  *United States v. Castro*, 166 F.3d 728, 732 n.6 (5th Cir. 1999).

the motorist is willing to sign the promise to appear).[29] The seminal case construing the earliest incarnation of these Transportation Code provisions clearly contemplated that a motorist who was detained along the roadside for a speeding violation, and who agreed to sign a promise to appear in lieu of being taken immediately before a magistrate, was nevertheless initially "arrested" and then released from "custody" once he signed the citation.[30] Later cases established that such an arrest does not amount to a "full custodial arrest," such that it would authorize the arresting officer to conduct a search-incident-to-arrest without first obtaining a search warrant.[31] But the Transportation Code scheme clearly regards it as some form, degree, or gradation of "arrest," however fleeting. We said as much

---

[29]

TEX. TRANSP. CODE §§ 543.004 & 543.005.

[30]

*Montgomery v. State*, 145 Tex. Cr. R. 606, 609-10, 170 S.W.2d 750, 752 (1943). *See also Spencer v. Southland Life Insurance Company*, 340 S.W.2d 335, 337 (Civ. App.—Ft. Worth 1960, writ ref'd); *Borner v. State*, 521 S.W.2d 852, 854 (Tex. Crim. App. 1975). The enactment of the Transportation Code in 1995 was not intended to make substantive changes to earlier statutory provisions, but merely to recodify them. *See* Acts 1995, 74th Leg., ch. 165, p. 1871, eff. Sept. 1, 1995. And indeed, Section 543.005 of the Transportation Code still speaks in terms of "releasing" a motorist from "custody" once he signs the citation promising to appear. TEX. TRANSP. CODE § 543.005. The Third Edition of Texas Jurisprudence has apparently construed the recodified provisions of the Transportation Code pertaining to traffic violations accordingly, to authorize the "arrest" of violators, including speeders, subject to "release . . . from custody" if and when the violator signs the promise to appear on the citation. 22 Tex. Jur. 3d § 2277 (2001), at pp. 294-95.

[31]

*E.g.*, *Thomas v. State*, 572 S.W.2d 507, 509 (Tex. Crim. App. 1976) (opinion on original submission); *Christian v. State*, *supra*; *Linnett v. State*, 647 S.W.2d 672, 675 (Tex. Crim. App. 1983); *Williams v. State*, 726 S.W.2d 99, 101 n.1 (Tex. Crim. App. 1986). *See also* George E. Dix & Robert O. Dawson, 40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 10.14 (2d ed. 2001), at 579 ("If fealty to the statutory language [of the Transportation Code] requires that the detention involved [in a "traffic stop"] be labeled an 'arrest,' it is not the sort of 'custodial arrest' that subjects the person to the incidental searches allowed by Fourth Amendment law.").

in *State v. Kurtz*,[32] where we concluded that "[t]he [Transportation] Code makes it clear that its use of the term 'arrest' is not limited to custodial arrest."[33]

But does the "arrest" associated with a traffic stop equate with being "under arrest" for purposes of the definition of "custody" in Section 38.01(1)(A) of the Penal Code, such that a motorist who is released from "custody" under the provisions of the Transportation Code but then fails to appear as promised in the citation has committed an offense under Section 38.01(a) of the Penal Code?  We believe so.  The Penal Code itself contains no definition of "arrest" to compare to the apparent scope of "arrest" as used in the Transportation Code.  But the Code of Criminal Procedure provides that "[a] person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."[34]   We have construed this provision to mean that, at least as a matter of state law, a restriction upon personal liberty that amounts to less than "full custodial arrest" may nevertheless constitute an "arrest."[35]  And at least one court of appeals has construed a Transportation Code "arrest"

---

[32] 152 S.W.3d 72 (Tex. Crim. App. 2004).

[33] *Id*. at 79.

[34] TEX. CODE CRIM. PROC. art. 15.22.

[35] *Torres v. State*, 868 S.W.2d 798, 801 (Tex. Crim. App. 1993);  *Hoag v. State*, 728 S.W.2d 375, 379 (Tex. Crim. App. 1987);  *Brewster v. State*, 606 S.W.2d 325, 327 n.6 (Tex. Crim. App. 1980); *White v. State*, 601 S.W.2d 364, 365-66 (Tex. Crim. App. 1980);  *Maldonado v. State*, 528 S.W.2d 234, 237 (Tex. Crim. App. 1975);  *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex. Crim. App. 1973);  *Woods v. State*, 466 S.W.2d 741, 743 (Tex. Crim. App. 1971).

to be of the type to justify prosecution for resisting arrest under another offense in Chapter 38 of the Penal Code.[36] We conclude that the failure to appear to answer to a traffic offense citation, including a speeding citation, *does* constitute a failure to appear under the terms of a lawful release from "custody" for purposes of Sections 38.01(1)(A) and 38.10(a) of the Penal Code, and is therefore an offense under the latter provision.

## Are the Statutes *In Pari Materia*?

We have described the doctrine of *in pari materia* in this way:

> It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered to be in pari materia though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature.

> In order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts in pari materia will, therefore, be taken, read, and construed together, each enactment in reference to the other, as though they were parts of one and the same law. Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy.

> The purpose of the in pari materia rule of construction is to carry out the full legislative intent, by giving effect to all laws and provisions bearing on the same subject. The rule proceeds on the same supposition that several statutes relating to one subject are governed by one spirit and policy, and are intended to be consistent and harmonious in their several parts and provisions. Thus, it applies where one statute deals with a subject in comprehensive terms and

---

[36] *See Bruno v. State*, 922 S.W.2d 292, 295 (Tex. App.—Amarillo 1996, no pet.) (in prosecution for resisting arrest, where appellant was detained for a Transportation Code offense, "until appellant was cited and allowed to leave, he was undergoing an arrest"). *See* TEX. PENAL CODE § 38.03(a) ("a person commits an offense if he intentionally or knowingly obstructs . . . a peace officer . . . from effecting an arrest . . . by using force against the peace officer[.]").

another deals with a portion of the same subject in a more definite way. But where a general statute and a more detailed enactment are in conflict, the latter will prevail, regardless of whether it was passed prior to or subsequently to the general statute, unless it appears that the legislature intended to make the general act controlling.[37]

The doctrine has been codified in Section 311.026 of the Government Code:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.[38]

With respect to how the doctrine applies to penal provisions, we have observed:

In construing penal provisions this Court has on a number of occasions found two statutes to be in pari materia, where one provision has broadly defined an offense, and a second has more narrowly hewn another offense, complete within itself, to proscribe conduct that would otherwise meet every element of, and hence be punishable under, the broader provision. In the case in which the special statute provides for a lesser range of punishment than the general, obviously an "irreconcilable conflict" exists, and due process and due course of law dictate that an accused be prosecuted under the special provision, in keeping with presumed legislative intent. Accordingly, where range of punishment under what is perceived to be the more specifically defined offense is less than that for the broader, . . . this Court has not hesitated to reverse convictions obtained under the broader provision.[39]

Or, as we stated more succinctly in a recent opinion, "a defendant has a due process right to

---

[37]

*Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988), *citing* 53 Tex.Jur.2d, *Statutes* § 186 (1964), at 280.

[38]

TEX. GOV'T CODE § 311.026.

[39]

*Mills v. State*, 722 S.W.2d 411, 414 (Tex. Crim. App. 1986).

be prosecuted under a 'special' statute that is *in pari materia* with a broader statute when these statutes irreconcilably conflict."[40]

Section 38.10(a) of the Penal Code has "broadly defined" the offense of failure to appear when conditionally released from custody, regardless of the basis for that custody. Because a motorist who has been pulled over for the issuance of a speeding citation *is* "under arrest" in contemplation of Section 38.01(1)(A)'s definition of "custody," then a person in the appellant's position, who signed a promise to appear to answer for a speeding offense but then failed to appear as promised, is subject to prosecution under this broad provision. But Section 543.009(b) of the Transportation Code has more narrowly hewn an offense, complete in itself, to specifically proscribe the failure to appear in court pursuant to a written promise upon being arrested for an offense under Title 7, Subtitle C of the Transportation Code–an offense which would otherwise meet every element of, and hence be punishable under, the Penal Code provision. It is, therefore, a "special" provision in contemplation of Section 311.026 of the Code Construction Act and our case law construing the doctrine of *in pari materia*. Moreover, because violation of Section 543.009(b) of the Transportation Code carries a lesser range of punishment than the broader Section 38.10(a) of the Penal Code, the statutes are in irreconcilable conflict. In that event, due process and due course of law require that any defendant who fails to appear after promising to do so under the provisions of the Transportation Code, upon arrest for an offense defined in Title 7, Subtitle C therein, be

---

[40] *Ex parte Smith*, 185 S.W.3d 887, 893 (Tex. Crim. App. 2006).

prosecuted for the Transportation Code offense, not the broader Penal Code offense. The Legislature has clearly manifested a policy that a failure to appear in court to answer for a traffic infraction should carry a less severe punishment than other failures to appear. Because the appellant was prosecuted under the Penal Code, and assessed a fine in excess of what was allowable for the Transportation Code offense, he suffered a violation of due process.

## Procedural Default

Because it affirmed the appellant's conviction on the merits, the court of appeals did not address whether he may have procedurally defaulted his specific claim that he should have been charged under the Transportation Code instead of the Penal Code. The County Court at Law held, however, that the appellant "waived" this and other contentions on appeal because he did not begin to voice them until jury selection had begun. The County Criminal Court at Law cited no authority for this proposition. We note, however, that the Code of Criminal Procedure requires that, in order to preserve error in a complaint, either formal or substantive, a defendant must object "before the date on which the trial on the merits commences[.]"[41] We agree with the County Court at Law that, to the extent the appellant claimed on appeal that, e.g., he did not have sufficient notice from the complaint of the particular offense with which he was charged, that alleged error was not preserved. But we disagree that the appellant's renewed claim that the evidence showed that he was being prosecuted and punished under the wrong statute came too late for appellate review.

---

[41] TEX. CODE CRIM. PROC. art. 45.019(f).

In *Ex parte Smith*,[42] we held that a pre-trial *in pari materia* claim, brought first in a motion to quash and then in a pre-trial application for writ of habeas corpus, was "premature," since the State had not "had an opportunity to develop a complete record during a trial."[43] The evidence at trial could conceivably have shown that Smith was not, in fact, guilty of the special provision, and was therefore appropriately charged and tried under the broader provision. Here the appellant made his *in pari materia* argument known to the trial court at the outset of the trial, albeit prematurely, in a motion to quash. But he also reiterated his argument once the State's evidence was complete in his motion for directed verdict, and again in a motion for new trial after the verdict, both of which were denied.

On its face, the complaint itself was unobjectionable. It alleged a failure to appear *apparently* under the terms of the Penal Code provision, but did not allege the particular circumstances of the terms of his release or why he was in custody in the first place. It was only after the State's evidence disclosed that the case involved the failure to appear under the terms of a speeding citation that a basis for the appellant's *in pari materia* challenge became manifest. When he reiterated that challenge in his motions for directed verdict and new trial, the trial court was effectively put on notice that the appellant was being prosecuted under the wrong statutory provision. The appellant thereby presented his objection to the trial court clearly enough, and at a time when the trial court could have remedied the problem. *See*

---

[42] 185 S.W.3d 887 (Tex. Crim. App. 2006).

[43] *Id.*, at 893.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). The trial court should have taken steps to assure that the appellant was not being prosecuted, and more critically, *punished*, under the wrong statutory provision.

**CONCLUSION**

The trial court erred to allow the appellant to be prosecuted under the Penal Code. The court of appeals erred in allowing the appellant to be punished more severely than he could have been under the Transportation Code–a defect in the judgment that can be raised at any time, including for the first time on appeal.[44] The County Court at Law erred to hold that the appellant's objections to prosecution under the Penal Code were untimely and therefore "waived." We therefore reverse the judgment of the court of appeals, and remand the cause to the trial court for further proceedings not inconsistent with this opinion.[45]

Delivered:     March 5, 2008
Publish

---

[44] *See* note 15, *ante*.

[45] The appellant does not contend that the evidence was insufficient to support a conviction under the Transportation Code provision.