# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00164-CR

**The State of Texas, Appellant**

**v.**

**Jeffery Porter Allen, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
## NO. CR2008-327, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

Jeffery Porter Allen was indicted for the offense of forgery of a government document (a driver's license). *See* Tex. Penal Code Ann. § 32.21 (West Supp. 2009) (defining forgery). Allen moved to quash the indictment, arguing that although the forgery statute found in the penal code generally applies to the violations alleged in the indictment, the transportation code contains more specific provisions covering the conduct at issue. *See* Tex. Transp. Code Ann. §§ 521.451 (West 2007), .455 (West Supp. 2010). For that reason, Allen argued that the more specific provisions under the transportation code controlled. The trial court granted Allen's motion and quashed the indictment. The State appeals the trial court's order. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(1) (West Supp. 2009) (limiting grounds upon which State may appeal order of court in criminal case). We will reverse and remand the case to the district court.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2008, the State indicted Allen for forgery of a government document, a third-degree felony under the penal code. *See* Tex. Penal Code Ann. § 32.21(e)(3). The indictment alleged that Allen

> did . . . , with intent to defraud or harm another[,] pass, publish, or otherwise utter a writing that was forged, knowing such writing was forged, and such writing was a governmental record or other instrument issued by state government or a subdivision thereof, to-wit: a Texas Driver[']s License of the tenor following:
>
> [The indictment then includes a photographic reproduction of the driver's license that Allen allegedly used. The name on the license is "Greg Sampson," not Jeffery Allen. The record does not indicate whether other information on the license (e.g., date of birth, address) is false or whether the individual pictured on the license is Allen.]

Allen filed a motion to quash the indictment. Essentially, Allen argued that the offense alleged must be tried under various transportation code provisions rather than the forgery statute. Moreover, Allen contended that because his alleged crime was only a misdemeanor under the transportation code, the district court lacked jurisdiction over the case. *See* Tex. Code Crim. Proc. Ann. art. 4.05 (West 2005) (limiting types of offenses that district courts have jurisdiction over to felonies and certain misdemeanors).

In response to the motion, the court held a hearing. During the hearing, no evidence was presented regarding the allegations against Allen. Ultimately, the district court issued an order granting Allen's motion. The court subsequently issued findings and conclusions stating that the transportation code provisions applied, that Allen had the right to be charged under the transportation code, and that accordingly, the court did not have jurisdiction over the case.

2

The State appeals the district court's order.

## STANDARD OF REVIEW

"The sufficiency of a charging instrument presents a question of law." *Smith v. State*, 309 S.W.3d 10, 13 (Tex. Crim. App. 2010). Accordingly, appellate courts review a trial court's ruling on a motion to quash under a de novo standard. *Id.* at 14; *see also State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (applying de novo review to trial court's decision to quash indictment because issue was question of law and because resolution of issue did not depend on "credibility and demeanor of witnesses").

## DISCUSSION

In a single issue on appeal, the State alleges that the district court erred by concluding that the provision of the forgery statute under which Allen was indicted was in pari materia with various transportation code provisions and that Allen, therefore, had the right to be charged under the transportation code.

The doctrine of in pari materia is a principle of statutory interpretation. *Mills v. State*, 722 S.W.2d 411, 413 (Tex. Crim. App. 1986). The doctrine is codified in the Code Construction Act as follows:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

3

Tex. Gov't Code Ann. § 311.026 (West 2005); *see Azeez v. State*, 248 S.W.3d 182, 192 (Tex. Crim. App. 2008) (stating that government code section 311.026 codifies doctrine of in pari materia). The doctrine of in pari materia is employed to implement the "'full legislative intent, by giving effect to all laws and provisions bearing on the same subject.'" *Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988), *quoting* 53 Tex.Jur.2d, Statutes § 186 (1964), at 280.

We deem two criminal statutes to be in pari materia when one broadly defines an offense and the other more narrowly defines an offense, complete within itself, that proscribes conduct that meets every element of and would otherwise be punishable under the broader statute. *Azeez*, 248 S.W.3d at 192. Statutes that are in pari materia are construed together and, if possible, conflicts between them are harmonized. *Cheney*, 755 S.W.2d at 127. If conflicts between them cannot be harmonized—as when the narrower statute provides for a lesser punishment than the broader statute—a defendant has a due-process right to be prosecuted under the narrower statute in accordance with the presumed legislative intent that the more narrow statute apply. *Mills*, 722 S.W.2d at 414; *see Juarez v. State*, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010) (stating that "[w]hen interpreting statutes that are in pari materia and construed together, both are given effect with the special governing over the general in the event of a conflict").

Courts consider several factors in determining whether two statutes are in pari materia. *See Burke v. State*, 28 S.W.3d 545, 547-48 (Tex. Crim. App. 2000). The most important factor is similarity of object or purpose, which we analyze by considering whether the statutes (1) are contained in the same legislative act; (2) require the same elements of proof; (3) involve different penalties; and (4) were clearly written to achieve the same objective. *In re J. M. R.*, 149 S.W.3d 289,

4

292 (Tex. App.—Austin 2004, no pet.) (citing *Burke*, 28 S.W.3d at 547-49). When an in-pari-materia assertion is made prior to trial and, accordingly, before an evidentiary record has been developed, a court may only conclude that two statutes are in parti materia if the charging instrument "on its face" raises the in-pari-materia issue. *See State v. Wiesman*, 269 S.W.3d 769, 773-74 (Tex. App.—Austin 2008, no pet.).

With these principles in mind, we turn to the statutes at issue. Allen was charged with forging a governmental document, namely a driver's license. *See* Tex. Penal Code Ann. § 32.21(b), (e); *see also id.* § 37.01(2)(C) (West Supp. 2009) (listing license as type of governmental record). As mentioned above, Allen urges that various provisions of the transportation code are in pari materia with and narrower than the forgery provision at issue. In particular, Allen points to sections 521.451 and 521.455. *See* Tex. Transp. Code Ann. §§ 521.451, .455. Section 521.451 lists five categories of prohibited activities, but Allen limits his arguments to the behavior described in subsection 521.451(a)(1). *See id.* § 521.451(a)(1). The other subsections proscribe displaying or representing another's driver's license as one's own, lending or permitting another to use one's driver's license, possessing more than one current driver's license, and providing false information or making false statements when applying for "an original, renewal, or duplicate driver's license." *See id.* § 521.451(a)(2)-(5). There are no allegations in the indictment that would fall under any of these prohibited activities.

The subsection Allen relies on when making his in-pari-materia argument prohibits a person from displaying, causing or permitting to be displayed, or possessing driver's licenses that the person knows are "fictitious" or have "been altered." *Id.* § 521.451(a)(1). Allen also refers to

5

section 521.455, which states that "[a] person commits an offense if the person intentionally or knowingly uses a driver's license or certificate obtained in violation of Section 521.451[1] . . . to harm or defraud another." *Id.* § 521.455. A violation under either of the transportation code provisions is a class A misdemeanor, *see id.* §§ 521.451(b), .455(b), but the violation alleged under the forgery statute is a third-degree felony, *see* Tex. Penal Code Ann. § 32.21(e)(3) (stating that forgery is third degree felony if writing "is or purports to be . . . instruments issued by a state or national government").

For the reasons that follow, we cannot conclude that the transportation code provisions referred to by Allen are in pari materia with the forgery provision forming the basis for the indictment.[2]

First, the forgery statute and the transportation code provisions are not contained in the same legislative act. The forgery provision was codified in 1973, *see* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 32.21, 1973 Tex. Gen. Laws 883, 935, whereas the transportation code

---

[1] Section 521.455 also states that a person commits an offense if he uses a driver's license obtained in violation of section 521.454. Tex. Transp. Code Ann. § 521.455 (West Supp. 2010). On appeal, neither the State nor Allen argues that section 521.454 has any applicability to this case. That provision concerns false applications for driver's licenses, *see id.* § 521.454 (West Supp. 2010), and Allen's indictment makes no allegation regarding a driver's license application. Accordingly, we need not consider section 521.454 in this opinion.

[2] We note that transportation code section 521.455 now contains a subsection that speaks to in-pari-materia disputes. *See id*. § 521.455(c) (stating that "[i]f conduct constituting an offense under this section also constitutes an offense under another law, the actor may be prosecuted under this section, the other law, or both"). That subsection was added after this dispute arose, however, and does not apply retroactively. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 1130, § 35, 2009 Tex. Gen. Laws 3119, 3129.

6

provisions were codified in 1995. *See* Act of April 21, 1995, 74th Leg., R.S., ch. 165, § 1, secs. 521.451, .455, 1995 Tex. Gen. Laws 1025, 1574-75.

Second, the conduct prohibited by the transportation code provisions differs from that proscribed by the forgery provisions at issue. As mentioned above, subsection 521.451(a)(1) of the transportation code forbids people from *possessing* or *displaying* driver's licenses that they know are either fake or have been altered. *See* Tex. Transp. Code Ann. § 521.451(a)(1). As a preliminary matter, we note that there is no allegation in the indictment stating that Allen impermissibly possessed or displayed a fictitious driver's license.

Although possession is punishable under the transportation code, *id.*, possession is not punishable under the forgery provision that forms the basis for Allen's indictment.[3] The forgery provision at issue provides that a person commits an offense "if he forges a writing with intent to defraud or harm another." Tex. Penal Code Ann. § 32.21(b); *see also id.* § 32.21(e) (elevating degree of offense if forged writing "is or purports to be" governmental document). The statute defines "forge" as meaning "to alter, make, complete, execute, or authenticate any writing so that it purports" to be the act of another, to have been executed at a different time or place than it actually

---

[3] The forgery statute does prohibit the possession of a document but only if the document is "forged" and if the person has the "intent to utter" the document. Tex. Penal Code Ann. § 32.21(a)(1)(C) (West Supp. 2009). However, Allen was not charged under this provision of the penal code, and the indictment contains no allegations supporting a charge under that provision. Moreover, there is no requirement in subsection 521.451(a)(1) of the transportation code that the offender possess an object with an intent to "utter" it as is required by the forgery statute. *Compare* Tex. Transp. Code Ann. § 521.451(a)(1) (West 2007), *with* Tex. Penal Code Ann. § 32.21(a)(1)(C); *see also Burks v. State*, 693 S.W.2d 932, 935 (Tex. Crim. App. 1985) (noting that section 32.21(a)(1) of forgery statute consolidated various forgery statutes and now prohibits "three kinds of criminal acts . . . (1) making or altering, (2) passing or uttering[,] or (3) possessing with intent to utter").

7

was, or to be a copy of an original that does not exist. *Id.* § 32.21(a)(1)(A). The forgery statute also defines "forge" as meaning "to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged" under the definition given above. *Id.* § 32.21(a)(1)(B). Allen was charged under the second definition listed in the forgery statute (subsection 32.21(a)(1)(B)). In particular, the indictment alleged that Allen passed, published, or otherwise uttered a forged writing.

Because possession is not punishable under the forgery provision at issue, that provision can only be deemed in pari materia with the transportation code forgery provisions relied on by Allen if the forgery statute prohibits displaying or causing or permitting the display of a fictitious driver's license. *See* Tex. Transp. Code Ann. § 521.451(a)(1); Tex. Penal Code Ann. § 32.21(a), (b). The forgery statute does not expressly contain a display element. Accordingly, in order for the indictment to show on its face that the two statutes are in pari materia, displaying a driver's license must fall under the language contained in the provision under which Allen was indicted, which prohibits passing, publishing, or "otherwise" uttering a forged writing. *See* Tex. Penal Code Ann. § 32.21(a)(1)(B). "Display" is not defined by the transportation code, but the term is generally defined as meaning "to spread before the view: exhibit to the sight or mind: give evidence of: show, manifest, disclose." *Webster's Third New Int'l Dictionary* 654 (2002).

The terms "pass," "publish," and "utter" are not defined by the penal code, but various dictionary definitions for the terms demonstrate that there is some overlap in the meaning of those terms. For example, *Black's Law Dictionary* states that "'[p]ass,' 'utter' [and] 'publish' . . . are in some respects convertible terms, and, in a given case, 'pass' may include utter [and] publish." *Black's Law Dictionary* 776 (6th ed. abridged 1991); *see also Parker v. State*, 985 S.W.2d 460, 464

8

(Tex. Crim. App. 1999) (noting that there is great deal of overlap between terms pass, utter, and publish as used in forgery statute); *Smith v. State*, 762 S.W.2d 303, 304 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (stating that term "utter" is similar to term "pass").

Although the precise boundaries created by the legislature's use of the terms "utter," "pass," and "publish" are not easily ascertained, those terms seem to contemplate more than displaying an object. For example, *Black's Law Dictionary* explains that the words pass, utter, and publish "include any delivery of a note to another for value" and equates the words with "sell" in certain circumstances. *Black's Law Dictionary* 776 (6th ed. abridged 1991). Similarly, *Black's Law Dictionary* explains that the term "utter" means "[t]o put or send (as a forged check) into circulation; to publish or put forth; to offer. . . . To utter, as used in a statute against forgery . . . , means to offer, whether accepted or not, a forged instrument, with the representation, by words or actions, that the same is genuine." *Id.* at 1074; *see Peterson v. State*, 645 S.W.2d 852, 854 (Tex. App.—Tyler 1982, no pet.) (quoting definition of "utter" found in *Black's Law Dictionary*).

Support for the idea that the terms require more than merely displaying can also be found in non-legal dictionaries. For example, "utter" has been defined as meaning "to place on the market: offer for sale or barter: dispose of in trade: sell, vend." *Webster's Third New Int'l Dictionary* 2526 (2002). In addition, "publish" has been characterized as connoting "to place before the public . . . disseminate . . . to produce for publication or allow to be issued for distribution or sale." *Id.* at 1837. "Pass" has been assigned a similar definition as signifying "to go from one person to another . . . : circulate . . . : to place in circulation: give currency to . . . : to transfer from one person to another; cause to go from hand to hand." *Id.* at 1649-50.

9

Case law applying the terms in the forgery statute also indicates that the legislature intended something other than simply displaying a writing. For example, the court of criminal appeals determined that "an instrument is passed . . . if it is delivered or circulated" and that the term "pass" includes handing a forged instrument to another but also includes situations in which there is no manual transfer, including giving an instrument to one person and allowing that person to transfer it to another individual in exchange for compensation. *Parker*, 985 S.W.2d at 464. However, the court also explained that satisfying the "pass" element does not necessarily "require a showing that the defendant actually received consideration in exchange for the instrument" but does require a showing that the defendant "offer[ed] the instrument." *McGee v. State*, 681 S.W.2d 31, 31 (Tex. Crim. App. 1984); *see McDonald v. State*, 829 S.W.2d 378, 382 (Tex. App.—Texarkana 1992, no pet.) (stating that passing includes handing forged instrument from one person to another).

Moreover, when construing the meaning of a statute, courts must consider the whole statute and give effect to all of the words and phrases used, if possible. *See Seals v. State*, 187 S.W.3d 417, 422 (Tex. Crim. App. 2005). When the words "utter," "publish," and "pass" are viewed in light of the other activities prohibited by that forgery provision ("to issue, transfer, register the transfer of" a forged writing), it seems apparent that the legislature was intending to prohibit something more than simply displaying a fictitious writing. *See* Tex. Penal Code Ann. § 32.21(a)(1)(B). This seems particularly true in this case, where the legislature listed various prohibited activities but then included the phrase "or otherwise utter" at the end of the provision. *See id.*; *see also Webster's Third New Int'l Dictionary*, 1598 (2002) (defining "otherwise" as

10

meaning "in a different way or manner: differently"). In other words, the legislature's inclusion of the word "otherwise" is some indication that the prohibited acts are similar in nature.

In light of the preceding, we cannot conclude that the conduct prohibited by subsection 521.451(a)(1) of the transportation code falls squarely within the conduct identified by the forgery provision at issue. Although the analogy is not precisely on point, the distinction the legislature has made here is similar to the distinction it made between individuals who possess controlled substances and those who sell them to others. *Compare* Tex. Health & Safety Code Ann. § 481.115 (West 2010) (prohibiting possession of controlled substances), *with id.* § 481.112 (West 2010) (outlawing manufacturing or delivering controlled substances as well as possession of controlled substances with intent to deliver). In accordance with that distinction, the legislature imposed different penalties for the two offenses. *See id.* §§ 481.112, .115 (setting out different penalties for possession of defined amounts of controlled substances and for manufacturing or distributing same amounts). Similarly, the legislature created different sanctions for violations of the transportation code and for violations of the forgery statute. *Compare* Tex. Transp. Code Ann. §§ 521.451(b), .455(b) *with* Tex. Penal Code Ann. § 32.21(e)(3).

In addition, subsection 521.451(a)(1) of the transportation code does not have an "intent to harm or defraud another" element like the one listed in the forgery statute. *Compare* Tex. Transp. Code Ann. § 521.451(a)(1), *with* Tex. Penal Code Ann. § 32.21(b); *see also Burke*, 28 S.W.3d at 549 (concluding that statutes at issue were not in pari materia, in part, because one had mental-state element that other lacked); *In re J. M. R.*, 149 S.W.3d at 294-95 (same); *Segura v. State*, 100 S.W.3d 652, 656 (Tex. App.—Dallas 2003, no pet.) (same).

When arguing that the district court's decision was proper, Allen avers that section 521.455 contains the intent requirement and that the statutes must be read together. Section 521.455 does have a "harm or defraud another" element that is similar to that found in the forgery provision. *See* Tex. Transp. Code Ann. § 521.455(a). Specifically, the provision states that "[a] person commits an offense if the person *intentionally* or knowingly uses a driver's license or certificate obtained in violation of Section 521.451 . . . *to harm or defraud another*." *Id.* (emphases added).

Although section 521.455 refers to section 521.451, it does not provide a mental state for a crime alleged under section 521.451; on the contrary, section 521.455 sets out the elements and mental state for a separate offense. *Id.* § 521.455(a). In addition, it is not entirely clear that section 521.455 could have any bearing on the subsection of 521.451 that Allen relies on. Section 521.455 requires that the State prove that the "license or certificate" was "*obtained* in violation of Section 521.451." *Id.* (emphasis added). In addition to prohibiting the display or possession of a "fictitious" driver's license, *id.* § 521.451(a)(1), the remaining provisions of section 521.451 proscribe displaying or representing another's driver's license as one's own, lending or permitting another to use one's driver's license, possessing more than one current driver's license, and providing false information or making false statements on applications for "an original, renewal, or duplicate driver's license," *id.* § 521.451(a)(2)-(5). In light of the additional prohibitions listed in section 521.451, the "obtained in violation of Section 521.451" phrase found in section 521.455

12

most logically refers to the ban on providing false information or making false statements on driver's license applications. *See id.* §§ 521.451(a)(5), .455(a).[4]

Even assuming that section 521.455 can, as urged by Allen, be read in conjunction with subsection 521.451(a)(1) (displaying or possessing fictitious or altered licenses), we would still be unable to conclude that section 521.451(a)(1) and 521.455 are in pari materia with the forgery provision used in the indictment. There is no comparable "obtained in violation of" provision in the forgery statute. *Compare id.* § 521.455, *with* Tex. Penal Code Ann. § 32.21. Moreover, as discussed previously, the conduct prohibited by subsection 521.451(a)(1) differs from the behavior outlawed by the forgery provision at issue. *Compare* Tex. Transp. Code Ann. § 521.451(a)(1), *with* Tex. Penal Code Ann. § 32.21(a)(1)(B), (b). Consequently, even incorporating the "harm or defraud" element from section 521.455 of the transportation code into the behavior described in subsection 521.451(a)(1) does not lead to a conclusion that the forgery provision at issue is in pari materia with the transportation code provisions relied on by Allen because the elements of the offenses listed in the transportation code provisions would still not match the elements of the prohibited behavior identified in the forgery provision forming the basis for the indictment.[5]

---

[4] This conclusion is supported by the full text of section 521.455. As mentioned in footnote 1, section 521.455 states that a person commits an offense if he uses a driver's license "obtained in violation of" section 521.454. Tex. Transp. Code Ann. § 521.455(a). Like subsection 521.451(a)(5), section 521.454 concerns providing false information when applying for or renewing driver's licenses, *id.* § 521.454(a).

[5] In his motion to quash, Allen also invoked section 521.456 of the transportation code. *See* Tex. Transp. Code Ann. § 521.456 (West Supp. 2010). That provision addresses manufacturing and delivering counterfeit documents. *Id.* At the hearing on his motion, Allen asserted that he referred to section 521.456 because he believed that case law discussing the predecessor to section 521.456 also applied to sections 521.451 and 521.455. *See Ex parte Holbrook*, 606 S.W.2d 925, 926

13

For these reasons, we cannot conclude that subsection 521.451(a)(1) and section 521.455 of the transportation code are in pari materia with the forgery provision that forms the basis for Allen's indictment. Accordingly, we hold that the district court erred by granting

---

(Tex. Crim. App. 1980) (discussing predecessor statute to section 521.456). In other words, Allen was not asserting that the State could have charged him under section 521.456. Moreover, when it issued its order, the trial court granted Allen relief under sections 521.451 and 521.455 but not 521.456.

On appeal, Allen does not assert that the allegations in the indictment would support a charge under section 521.456, but he does refer to cases discussing the predecessor to section 521.456. Primarily, Allen relies on *Ex parte Holbrook*. In that case, Holbrook was charged with the crime of unlawful possession of a forged driver's license. *Id.* at 925-26. Under the statute in effect at that time, a person committed an offense if he made a driver's license or possessed the forged license with an intent to sell or circulate it. *See* Act of May 18, 1967, 60th Leg., R.S., ch. 328, § 44A, 1967 Tex. Gen. Laws 778, 787 (Former Tex. Rev. Civ. Stat. Ann. art. 6687b, § 44A(a)). In his application for a writ of habeas corpus, Holbrook asserted that his indictment was fundamentally flawed because it failed to allege that he possessed a license with the intent to use it. *Id.* Ultimately, the court of criminal appeals granted the relief requested and dismissed the indictment. *Id.*

When discussing the unlawful-possession statute, the court of criminal appeals commented that the alleged offense is also proscribed by the "general forgery statute." *Id.* Further, the court noted that the unlawful-possession statute "is a special statute which deals directly with the unlawful possession of a counterfeit driver's license. Under such circumstances, the special statute controls over the general statute." *Id.* In light of this language, Allen insists that the court of criminal appeals has already determined that "[t]he driver's license statutes and the forgery statute are in pari materia . . . and [that the] specific driver's license statutes control over the general penal code forgery provision."

Allen's reliance on this case is misplaced. In *Holbrook*, the court of criminal appeals was not confronted with determining whether the two statutes were actually in pari materia and any comment regarding the relationship between those statutes was dicta. Moreover, the statute at issue in *Holbrook* did not prohibit the conduct proscribed in sections 521.451(a)(1) and 521.455 of the transportation code. *See* Tex. Transp. Code Ann. §§ 521.451(a)(1), .455. In fact, as described above, when the statute at issue was subsequently recodified, it was placed into section 521.456 of the transportation code. *See id.* § 521.456 (West Supp. 2010) (prohibiting delivery or manufacture of counterfeit instruments). Accordingly, we cannot embrace Allen's assertion that the court of criminal appeals in *Holbrook* held that the statutes at issue in this case are in pari materia with the forgery statute.

14

Allen's motion to quash and that the State has the discretion to charge Allen under penal code section 32.21. *See Mills*, 722 S.W.2d at 414-15. We therefore sustain the State's issue on appeal.

## CONCLUSION

Having determined that the district court erred by granting Allen's motion to quash, we remand the cause for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Goodwin

Reversed and Remanded

Filed:   February 16, 2011

Publish