

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00164-CR
_____

BOBBY CARL LENNOX AKA BOBBY CARL LEANOX, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28256

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Burgess

O P I N I O N[1]

After a Lamar County jury found Bobby Carl Lennox[2] guilty of three counts of forgery of a financial instrument, the trial court enhanced his sentences and sentenced him to seventeen years' imprisonment on each count, with the sentences to run concurrently. Lennox appeals, maintaining that his sentences were outside the applicable punishment range, that the evidence was insufficient to show that he had the ability to pay court-appointed attorney fees, and that the trial court erred when it failed to hold an evidentiary hearing on his motion for a new trial.[3]

We conclude that there was egregiously harmful jury-charge error at guilt/innocence, entitling Lennox to a reformation of the judgment to reflect that he was convicted of three class B misdemeanor offenses and to a remand for a new punishment trial. Because of that conclusion, we need not address his other points.

After James Maurice McKnight died in 2018, his daughter, Fran King, closed McKnight's bank account at Guaranty Bank. Later, in December 2018, King asked Frank Norwood to have his auction company organize a sale of McKnight's estate. Among other individuals, Brandon Crawford, Destiny Brush, and Janae Lewis helped Norwood with the estate sale. Before the sale, King's family placed some items, including a checkbook, in a "safe room" in McKnight's home so that the items would not be sold. The evidence demonstrated Lewis's

---

[1]This opinion is an opinion on rehearing. We issued an opinion in this matter on February 20, 2020, but, by order dated April 24, 2020, withdrew it. This opinion replaces that February opinion.

[2]Appellant was also known as Bobby Carl Leanox.

[3]Lennox does not challenge the sufficiency of the evidence as to any of the three charges against him.

2

awareness that those items had been placed in the "safe room." The estate sale was conducted December 29, 2018.

Crawford testified that he and Lennox were "pretty good friends" and that he had worked with Lennox "a couple of times." Crawford also testified that Lennox admitted to him that he received the checks from the estate sale from Lewis, "from the dead guy," and to having passed the checks.

In January 2019, Nima Sherpa (Nima) was the manager of the Quick Track convenience store in Paris, Texas. Nima testified that she knew Lennox because he regularly came into the store and that Lennox often brought checks to the store to cash them. According to Nima, in January 2019, Lennox "passed" checks in the store that had been dated January 7, January 9, and January 12, 2019. The three checks were from McKnight's bank account and had been made payable to Bobby Lennox. Nima said that, because Lennox was a regular customer, she did not ask him to endorse the checks or to pay the normal check-cashing fee. Nima later learned that the bank "rejected" the three checks for insufficient funds.

Gyalbu Sherpa (Gyalbu), also a manager at Quick Track, stated that he knew Lennox because Lennox sometimes did "small jobs" for Quick Track stores. Gyalbu explained that, after Lennox cashed the checks and Gyalbu realized there were insufficient funds in the account, Gyalbu asked Lennox, "I said your checks are bad, why do you pass those checks?" Lennox responded that "[he] worked for somebody and those [were the employer's] checks." According to Gyalbu, Lennox claimed not to have known that the checks were "bad."

3

McKnight's daughter, King, stated that, after she closed her father's account at Guaranty Bank, she received a telephone call from an employee of the bank informing her that one of her father's bank account checks had gone "through" the bank. King said she reported the incident to law enforcement. She stated that she did not write the check and had never written any check to Lennox. King also said that, as far as she was aware, her father had not known Lennox or hired him to do any work.

The State contends that it appropriately indicted Lennox on three counts of forgery pursuant to Section 32.21(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 32.21(d) (Supp.). Section 32.21(d) states, "Subject to Subsection (e-1), an offense under this section is a state jail felony if the writing purports to be a . . . check[.]" *Id.*

Yet, Lennox asserts that the three offenses, as charged and as proven, were class B misdemeanors. In support of his position, he directs us to Section 32.21(e-1) of the Texas Penal Code, which states,

> If it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property or service, an offense under this section is . . . (2) a Class B misdemeanor if the value of the property or service is $100 or more but less than $750.

TEX. PENAL CODE ANN. § 32.21(e-1). Further, subsection (2) of Section 32.01 makes clear that, within the statutory scheme, the definition of property includes money. TEX. PENAL CODE ANN. § 32.01(2)(C).

There is no question that the jury convicted Lennox of three counts of forgery of a financial instrument by passing three forged checks, each valued at $100.00 but less than $750.00. The jury was instructed that the charges were state jail felonies. Consistent with his

4

claim that the charges should have been class B misdemeanors, Lennox maintains that the three sentences of seventeen years' imprisonment exceeded the applicable punishment range. We will address this issue as one of charge error.

At trial, Lennox did not object to the jury charge on guilt/innocence. On appeal, he does not urge a separate point of error expressly asserting charge error as such, but, in challenging what he frames as improper excessive sentences, he claims that the jury should have been charged during the guilt/innocence stage that the offenses were misdemeanors. He notes that he was indicted using felony language and that the trial court charged the jury using felony language, expressly noting that the charge omitted "the amounts of the three checks" that were expressly set out in the indictment. He asserts, therefore, that "the three offenses alleged against [him] in the indictment and found by the jury in the guilt-innocence charge[] were all class B misdemeanors." His argument, at its base, is that, because the State and the trial court treated his charges as felonies, when they were in fact class B misdemeanors, his sentences were outside the range of punishment. The logical result of Lennox's argument, if correct, is that the jury should have been charged that the offenses were class B misdemeanors, not felonies. The issue of jury-charge error was fairly raised.[4] Also, where there is jury-charge error, we may address the question, even if the error is unassigned, and can reverse if the error caused egregious harm. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Olivas v. State*, 202 S.W.3d 137 (Tex. Crim. App. 2006).

---

[4]In summarizing his first issue in three locations in his appellate brief, Lennox states, in various forms, "The judgments and punishment charges treated these three offenses as state jail felonies. However, as indicted and found by the jury, all three should have been class B misdemeanors, with the punishment enhanced."

5

We agree with Lennox and conclude that there was egregiously harmful jury-charge error during guilt/innocence, entitling Lennox to a modification of his convictions to be Class B misdemeanors and a new punishment trial.

In this case, Lennox was charged with passing three forged financial instruments. Count one of the indictment alleged, in relevant part, that Lennox

> did then and there, with intent to defraud or harm another, pass to Nima Sherpa, a forged writing, knowing such writing to be forged, and such writing had been so made or completed that it purported to be the act of James McKnight, who did not authorize the act, and the writing was a check of the tenor following:



Count two, using similar language, alleged that Lennox passed a forged check to Nima of the tenor following:

6



Count three, also using similar language, alleged that Lennox passed a forged check to Nima of the tenor following:



Moreover, the guilt/innocence jury charge essentially tracked the indictment, notably without any reference to the amounts of the three checks. For example, the jury charge on count one stated as follows:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about January 7, 2019, in Lamar County, Texas, the Defendant, Bobby Carl Lennox aka Bobby Carl Leanox, did then and there, with intent to defraud or harm another, pass to Nima Sherpa, a forged writing, knowing such writing to be forged, and such writing had been so

7

made or completed that it purported to be the act of James McKnight, who did not authorize the act, and the writing was a check, then you will find the Defendant *Guilty* of the offense of Forgery of a Financial Instrument as charged in Count One of the Indictment.

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict *Not Guilty.*

The portions of the jury charge addressing the other two counts were essentially the same as the above, but with different dates.

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Lee*, 415 S.W.3d at 917)).

8

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Id.* at 555 (citing *Abdnor*, 871 S.W.2d at 732). Here, because the defendant did not object to the charge, we will not reverse the judgment "unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), such that he did not receive a fair and impartial trial." *Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171)). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

First, the jury charge should have charged the offenses as class B misdemeanors. As we have set out in detail in our opinion in *State v. Green*, our cause number 06-20-00010-CR, issued this date, subsection (e-1) controls over subsection (d) when subsection (e-1) applies. *See* TEX. PENAL CODE ANN. § 32.21(d), (e-1). And, as we further noted in *Green*, the defendant's purpose in forging the writing in question is the element that determines the applicable offense classification under Section 32.21. Yet, the charge failed to ask the jury to determine Lennox's

purpose in forging the checks in this case. Because his purpose is what would elevate the offense from a class B misdemeanor under subsection (e-1)(2) to a state jail felony under subsection (d), the failure to ask the jury to resolve that issue was error under *Apprendi v. New Jersey*, 530 U.S. 466, 469 (2000). Accordingly, there was charge error.

However, Lennox did not object to the charge on this basis. We must, therefore, evaluate whether that error constituted egregious harm. *Ngo*, 175 S.W.3d at 743–44. In evaluating charge error for egregious harm, "we consider (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the trial court as a whole." *Niles v. State*, 595 S.W.3d 709, 712 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (op. on remand) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

As noted above, the charge in this case includes no instruction on the purpose element of the offense sufficient to make out a state jail felony. *See id.* Yet, after the jury found Lennox guilty, the trial court submitted a punishment charge to the jury based on a conviction as an enhanced state jail felony. Accordingly, the judgment of conviction finds Lennox guilty of three state jail felonies without any jury finding on Lennox's purpose as a jurisdictional element to the offense. Therefore, "the charge weighs in favor of concluding appellant has suffered egregious harm." *Id.*

In addition, as the court of appeals noted in *Niles*, the state of the evidence "factor requires a determination of whether the jury-charge error related to a contested issue. It did not." *Id.* (citing *Hutch*, 922 S.W.2d at 173). When Lennox forged the three checks, took them to the

10

convenience store, and cashed them, the uncontroverted evidence shows that he obtained property in the form of money.[5] Section 32.21(2)(C) defines property as including money.[6] TEX. PENAL CODE ANN. § 32.01(2)(C). Section 32.21(d) expressly states that it is subject to subsection 32.21(e-1). Because the allegations of the indictment and the clear proof at trial spell out offenses under subsection (e-1), the evidence supports conviction under only subsection (e-1)(2), not under subsection (d).[7] Accordingly, this factor weighs in favor of egregious harm.

Neither counsel argued to the jury Lennox's purpose in forging the documents. At no time did counsel suggest to the jury that Lennox forged the checks in question for any purpose other than "to obtain or attempt to obtain a property or service." TEX. PENAL CODE ANN. §32.21(e-1). This factor weighs in favor of egregious harm.

Finally, this case presents the mirror image of the facts in *Niles*. In *Niles*, the charge failed to allege the enhancing factor that the victims were public servants, but the uncontroverted

---

[5]The undisputed evidence was that Lennox's acts committing forgery were in cashing the three forged checks in the amounts of $137.00, $130.00, and $150.00, respectively. In other words, it was "shown on the trial" that he passed the forged checks "to obtain . . . property," in the form of cash, establishing subsection (e-1) as the provision defining his offenses. *See* TEX. PENAL CODE ANN. § 32.21(e-1).

[6]One might conclude that the indictment does not allege any cash or other property received by Lennox and that little or no evidence suggests that he received cash or property from the checks. But the indictment clearly sets out the three checks that it alleges were passed by Lennox, including the images of the actual checks, showing that they were made payable to him. At the very least, the indictment certainly fails to exclude the applicability of subsection (e-1), the section to which subsection (d) is expressly subject. Also, no evidence suggests that Lennox did not receive property or service in exchange for those checks; in fact, the uncontroverted evidence is that he "cashed" them and that he, later, paid one of them back. Also, on appeal, the State recites that he got cash for the checks.

[7]The indictment's caption recited that the offenses were state-jail felonies under subsection (d). While this was sufficient to give the trial court jurisdiction over the offense in the absence of a motion to quash the indictment, *see Kirkpatrick v. State*, 279 S.W.3d 324 (Tex. Crim. App. 2009), and *Diruzzo v. State*, 581 S.W.3d 788, 804 n.24 (Tex. Crim. App. 2019), indictment captions are not considered part of the charging instrument, *Stansbury v. State*, 82 S.W.2d 962, 964 (Tex. Crim. App. 1935); *Adams v. State*, 222 S.W.3d 37, 53 (Tex. App.—Austin 2005, pet. ref'd). We must go by the offense set out by the allegations contained in the body of the indictment, rather than by the conflicting caption. *See Adams*, 222 S.W.3d at 52–53; *Rager v. State*, No. 09-10-00259-CR, 2011 WL 2732242, at *1 (Tex. App.—Beaumont July 31, 2011, no pet.) (mem. op., not designated for publication).

proof was that they were. *Niles*, 595 S.W.3d at 713. Here, the charge failed to allege a purpose other than "to obtain or attempt to obtain a property or service," whereas the undisputed evidence proved that Lennox's purpose was to "obtain property." Accordingly, the other-relevant-information factor weighs in favor of a finding of egregious harm. Because all four factors weigh in favor of a finding of egregious harm, we find that the charge error in this case was egregiously harmful.

The question before us now is how to dispose of this case. In its earlier opinion in *Niles*, the Texas Court of Criminal Appeals explained what should happen when there has been charge error resulting from a failure to charge an enhancing element under *Apprendi*. *See Niles v. State*, 555 S.W.3d 562, 567–68 (Tex. Crim. App. 2018).

In *Niles*, the defendant, a firefighter, threatened to shoot some of his fellow firefighters over a work dispute. *Id.* at 564. The defendant was charged in two indictments with making a terroristic threat against a public servant. *Id.* The Texas Court of Criminal Appeals observed that a "Terroristic Threat is usually a Class B misdemeanor, but the offense is a Class A misdemeanor 'if the offense is committed against a public servant.'" *Id.* At trial, the evidence established that the victims were public servants, but the jury was not asked to determine whether the victims were public servants. *Id.* at 567. The Texas Court of Criminal Appeals then noted that "[b]oth parties on direct appeal recognized *Apprendi* error—that is jury charge error," *Id.* at 569, and the defendant argued that "'both sentences are illegal' because they are outside the maximum punishment for a Class B offense." *Id.* at 568. The Texas Court of Criminal Appeals also observed that "[t]he State conceded *Apprendi* error and made the same

12

recommendation that Appellant did, that the appellate court reform the judgments to Class B, reverse the sentences in both cause numbers, and remand for a new punishment hearing," and "[n]ot surprisingly, the court of appeals did just that." *Id.*

The state prosecuting attorney moved for a rehearing in the court of appeals. *Id.* While it agreed that charge error existed, it argued that, because *Apprendi* error is not structural, the court of appeals was required to evaluate the error for harm and, had it done so, would have found the error to be harmless. *Id.* The Texas Court of Criminal Appeals agreed with the state prosecutor's position, reversed the judgment, and remanded the cases back to the court of appeals for a harm analysis. *Id.* On remand, the court of appeals found that the error in each case was harmless, largely because the evidence exclusively established that the victims were public servants. *Niles*, 595 S.W.3d at 713.

Based on the fact that, in *Niles*, the Texas Court of Criminal Appeals reversed the court of appeals's original ruling that reformed the judgments to reflect convictions of class B misdemeanors and remanded the cases to the trial court for a new trial on punishment, it could be argued that, in light of the charge error below, we should reverse the trial court's judgment and sentence and remand the case to the trial court for a new trial on guilt/innocence. However, on closer inspection of that opinion, the Texas Court of Criminal Appeals held merely that "the court of appeals erred to reform the judgments to Class B offenses *without first analyzing whether the jury charge error resulted in harm.*" *Niles*, 555 S.W.3d at 573 (emphasis added). Consequently, although the court of appeals ultimately determined that the error in that case was

13

harmless and affirmed the trial court's judgments, the Texas Court of Criminal Appeals implied that reformation of the judgments would have been appropriate if the error had been harmful.

Here, we have found the charge error to be egregiously harmful. The undisputed evidence established that Lennox forged the checks in question "to obtain or attempt to obtain a property or service," and there is no evidence in the record that he did so for any other purpose. Under Section 32.21(e-1)(2), a forgery committed "to obtain or attempt to obtain a property or service" in an aggregate amount of more than $100.00 but less than $750.00 is a class B misdemeanor. TEX. PENAL CODE ANN. § 32.21(e-1)(2). The indictment, on its face, would support conviction under subsection (e-1), and the undisputed evidence at trial established that subsection (e-1) applied. As noted, *Niles* suggests that reformation of the judgment to reflect convictions for class B misdemeanors is the appropriate disposition of this case.

Therefore, we reform the judgment in this case to reflect that Lennox was convicted of three class B misdemeanor offenses under Section 32.21(e-1)(2). He received sentences outside the punishment range for class B misdemeanors. Consequently, we reverse the sentences and remand the case to the trial court to conduct a new trial on punishment for the class B misdemeanors.


Josh R. Morriss, III
Chief Justice


14

CONCURRING OPINION

I concur with the majority opinion. I write separately to explain why I believe that our opinion in this case and in *State v. Green*, our cause number 06-20-00010-CR, which we also decided this day, properly harmonizes the law as explained by the Court of Criminal Appeals in *Kirkpatrick v. State*, *Diruzzo v. State*, and *Azeez v. State*. I will begin by summarizing the holdings in those four opinions. Finally, I will explain how these cases control the outcome in this case.

## I.  Summary of the Relevant Case Law

### A.  *State v. Green*

In *State v. Green*, we interpreted the 2017 amendments to Section 32.21 of the Penal Code. Green was charged by indictment with a third-degree felony for forgery of a twenty-dollar bill as "an issue of money" under Section 32.21(e). Prior to trial, Green filed a motion to quash the indictment, arguing that the offense was actually a class C misdemeanor under Section 32.21(e-1) because the allegedly forged twenty-dollar bill was used to obtain a two-dollar cigarette lighter. The trial court granted Green's motion to quash and dismissed the indictment, and the State appealed the trial court's ruling.

On appeal, we explained, in *Green*, that the amended language in subsection (e-1)—"if it is shown on the trial of the offense"—created a new element to the offense of forgery, namely, the defendant's purpose in forging the writing in question. We further explained that the amended language in subsections (d) and (e), making those subsections "subject to Subsection (e-1)," makes subsections (d) and (e) subordinate to subsection (e-1) so that an offense must be

15

charged under subsection (e-1) if it can be. We further explained that prosecution under either subsection (d) or (e) is still viable if the State can prove that the defendant forged the writing in question for some purpose other than "to obtain or attempt to obtain a property or service." Finally, we explained that, where an offense under subsection (e-1) would be a misdemeanor, whereas an offense under subsections (d) and (e) is always a felony offense, in a prosecution under subsections (d) or (e), the defendant's purpose in forging the writing is an enhancing element that must be alleged in the indictment and proven beyond a reasonable doubt at trial. We concluded that, because the State did not allege Green's purpose in forging the twenty-dollar bill at issue in that case, it failed to apprise Green of the offense with which he was charged, and it failed to demonstrate that the offense charged was one that vested jurisdiction in the trial court. Accordingly, we affirmed the trial court's ruling.

### B.    *Kirkpatrick v. State*

In *Kirkpatrick v. State*, "[a]ppellant was charged with forgery and tampering with a governmental record in three counts." *Kirkpatrick v. State*, 279 S.W.3d 324 (Tex. Crim. App. 2009). The trial court granted an instructed verdict on the forgery count, and the State proceeded to trial on the remaining counts of tampering with governmental records. *Id.* at 325. On appeal, the court of appeals agreed with the defendant that the remaining two counts in the indictment failed to vest subject-matter jurisdiction in the trial court because "'the indictment alleged Class A misdemeanor offenses of tampering with a governmental record[,]' but '[t[he indictment . . . [did] not show on its face the State's intent to charge a felony or other offense for which the district court [had] jurisdiction.'" *Id.* It concluded that, "'because the indictment did not vest the

16

district court with jurisdiction, appellant did not waive her complaint by failing to object prior to the day of trial.'" *Id.* at 326. Therefore, the court of appeals reversed the judgment of the trial court and rendered a judgment of acquittal for the defendant. *Id.*

The Court of Criminal Appeals granted the state prosecuting attorney's petition for discretionary review. *Id.* It noted,

> The parties agree that the faces of the indictments at issue here allege misdemeanor tampering with a governmental record: "the indictment[s] failed to contain language that would charge a felony offense—i.e., that Appellant intended to defraud or harm another or that the governmental record was of the type to make the offense a third-degree felony." Predictably, they disagree as to whether appellant's failure to object before trial, to being tried on misdemeanor allegations in a district court prevented the court of appeals from granting relief on her appellate complaints about subject-matter jurisdiction.

*Id.* at 327.

In ruling that the indictment vested jurisdiction in the trial court, notwithstanding the missing language, the Court of Criminal Appeals noted,

> Here, although the indictment properly charged a misdemeanor and lacked an element necessary to charge a felony, the felony offense exists, and the indictment's return in a felony court put appellant on notice that the charging of the felony offense was intended. Further, the face of each indictment contains a heading: "Indictment—Tampering with a Governmental Record 3rd Degree Felony,—[Texas Penal Code] § 37.10(a)—Code 73990275." The Penal Code section was easily ascertainable, and the notation that the offense was a third-degree felony clearly indicated that the state intended to charge a felony offense and that the district court had subject-matter jurisdiction. Appellant had adequate notice that she was charged with a felony. If she had confusion about whether the State did, or intended to, charge her with a felony, she could have, and should have, objected to the defective indictment before the day of trial.

17

*Id.* at 329. Accordingly, the Court of Criminal Appeals reversed the opinion of the court of appeals and remanded the case back to that court "to consider appellant's unaddressed claim of error as to an objection under the attorney-client privilege." *Id.*

### C.    *Diruzzo v. State*

As we explained in our opinion in *Green*, cause number 06-20-00010-CR, issued at the same time as this opinion, in *Diruzzo v. State*,

> the State charged the defendant with sixteen counts of practicing medicine without a license. Each count was headed with a caption that noted: "§§ 155.001 & 165.152 Occupation Code/3rd DEGREE FELONY." Appellant moved to quash the indictment before trial on the basis that the trial court lacked subject-matter jurisdiction because the indictment only alleged misdemeanor offenses. He argued that based on amendments to Section 165.152 that the Legislature passed in 2003, which he asserted made the provision applicable only to licensed physicians who have violated the Texas Medical Practices Act, the trial court lacked subject-matter jurisdiction because the indictment alleged no more than a misdemeanor offense. He further argued "that, after the 2003 amendment, only Sections 165.151 and 165.153 may be read to apply to non-physicians who practice medicine" and "[b]ecause Section 165.153 requires a showing of harm as an element of the felony offense, and because the indictment failed to allege any harm, he urged, the indictment can only be construed to allege the misdemeanor offense described in Section 165.151." The trial court denied his motion to quash. After the trial court denied the motion, the case proceeded to trial and Diruzzo was convicted on all sixteen counts and sentenced to four years' imprisonment on each count.

(Citations omitted).

After interpreting the legislative amendments to the Occupations Code sections at issue in that case, the Court of Criminal Appeals ruled on discretionary review that, "[b]ecause the indictment in this cause alleged that Appellant violated the subtitle by practicing medicine without a license, but failed to allege harm, it alleged no more than a misdemeanor offense." *Diruzzo*, 581 S.W.3d at 804. Accordingly, the Court of Criminal Appeals held that "the trial

18

court erred to deny Appellant's motion to quash the indictment." *Id.* As we noted in our opinion in *Green*, the Court of Criminal appeals specifically distinguished its holding in *Kirkpatrick*, noting that, "in the face of the Appellant's manifest objection to it . . . in his pretrial motion to quash, [the State] failed to properly invoke the subject-matter jurisdiction of the district court that purported to convict him." (Citing *Diruzzo*, 581 S.W.3d at 804 n.24.)

### D. *Azeez v. State*

Finally, in *Azeez v. State*, the defendant was charged by complaint with "unlawfully and knowingly fail[ing] to appear . . . in accordance with the terms of his release after having been lawfully released from custody on condition that he subsequently appear in said court." *Azeez v. State*, 248 S.W.3d 182, 185 n.5 (Tex. Crim. App. 2008). His requirement to appear arose from his act of signing a traffic citation "promis[ing] to appear in Municipal Court No. 15 on July 21, 2003." *Id.* at 185. The charging language in the complaint could have been read as alleging either a class C misdemeanor under Section 38.10 of the Penal Code or a misdemeanor offense under Section 543.009(b) of the Transportation Code, which carried a maximum fine of $200.00. *Id.* at 184 n.1. The defendant filed a motion to quash the complaint, arguing that he should have been charged with the lesser Transportation Code offense. The trial court denied the motion to quash, and he was subsequently convicted and sentenced to pay a $400.00 fine. *Id.*

On discretionary review, the Court of Criminal Appeals held that the defendant had a right under the Due Process Clause of the United States Constitution and the due course of law provision of the Texas Constitution to be charged with the lesser Transportation Code offense

and that, therefore, "the trial court erred to allow the appellant to be prosecuted under the Penal Code." *Id*. at 194. The Court of Criminal Appeals went on to hold that,

> after the State's evidence disclosed that the case involved the failure to appear under the terms of a speeding citation . . . a basis for the appellant's in pari materia challenge became manifest. When he reiterated that challenge in his motions for directed verdict and new trial, the trial court was effectively put on notice that the appellant was being prosecuted under the wrong statutory provision. The appellant thereby presented his objection to the trial court clearly enough, and at a time when the trial court could have remedied the problem. The trial court should have taken steps to assure that the appellant was not being prosecuted, and more critically, *punished*, under the wrong statutory provision.

*Id.*

### E.     Summary

In summary, if, as in this case, the State nominally alleges a felony offense under Section 32.21 in an indictment handed down by a grand jury, the defendant must move to quash the indictment prior to trial to challenge whether the indictment vests jurisdiction in the trial court; otherwise, the indictment is sufficient to demonstrate that the trial court has subject-matter jurisdiction over the offense. *Kirkpatrick*, 279 S.W.3d at 329. And, in the absence of a motion to quash the indictment, the defendant waives any objection that the indictment fails to apprise him of the offense with which he is charged. *Duron v. State*, 915 S.W.2d 920, 921–22 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, *Duron v. State*, 956 S.W.3d 547 (Tex. Crim. App. 1997) (holding that, "[i]f the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial commences, he waives or forfeits the right to object to the defect, error, or irregularity and he may not raise the

20

objection on appeal or in any other post-conviction proceeding") (citing TEX. CODE CRIM. PROC. ANN. art. 1.14(b)).

On the other hand, if, as in *Green*, the defendant files a motion to quash prior to trial challenging the trial court's subject-matter jurisdiction over the case, the State cannot rely on a nominal heading alleging "Forgery, F3" to establish that the offense is one that vests jurisdiction in the trial court. *Diruzzo*, 581 S.W.3d at 804 n.24. Rather, in that instance, the indictment must contain sufficient language to demonstrate that the offense charged "is one which vests jurisdiction in the trial court." *Kirkpatrick*, 279 S.W.3d at 328. It must also allege facts sufficient so that "the trial court (and reviewing appellate courts) and the defendant can identify what penal code provision is alleged." *Id.* Because the defendant's purpose in forging the writing in issue is the element that could enhance the level of the offense from a misdemeanor under subsection (e-1)(1)–(3) to a felony under subsections (d) or (e), to charge a defendant with a violation of Section 32.21, subsection (d) or (e), the State must allege in the indictment the defendant's purpose in forging the writing in question, and that purpose must be something other than "to obtain or attempt to obtain a property or service." TEX. PENAL CODE ANN. § 32.21(e-1); *see Apprendi*, 530 U.S. at 469.[8] Nevertheless, even where the defendant does not move to

---

[8]In both *Green* and *Lennox*, the State charged the defendants with felony forgeries based on conduct that would have been misdemeanors under subsection (e-1)—not by pleading and proving additional information that would have enhanced the level of the offenses—but by disregarding information that would have lowered the level of the offenses. To the extent the offense would be a felony under subsection (e-1), however, it could be argued that alleging the defendant's purpose in forging the writing would not be not required under *Apprendi* because charging under (d) or (e) would not increase the offense level and may, in fact, lower it. Nevertheless, both *Green* and *Lennox* demonstrate why due process would require the State to allege the defendant's purpose in forging the writing in every forgery case regardless of whether it would be a felony under subsection (e-1).

In *Green*, the defendant was charged with a third-degree felony for conduct that would otherwise have carried a maximum punishment of a $500.00 fine, and he spent six months in jail on a felony bond before the trial court dismissed the indictment. Likewise, in this case, Lennox received three seventeen-year prison sentences even

21

quash the indictment, once the case proceeds to trial on the indictment and the evidence demonstrates that a defendant is being prosecuted under the wrong statutory provision, the trial court has an obligation to "take[] steps to assure that the [defendant is] not being prosecuted, and more critically, *punished*, under the wrong statutory provision." *Azeez*, 248 S.W.3d at 194.

---

though the offense is actually a class B misdemeanor with a maximum punishment range of up to six months in the county jail, and he may well have served more than the true maximum sentence during the pendency of this appeal. As these cases starkly demonstrate, a defendant could serve substantially more time in jail awaiting trial or waiting for resolution of his appeal than the maximum punishment he could possibly receive under the correct offense classification. It is difficult to conceive how the Due Process Clause of the United States Constitution and the due course of law provision of the Texas Constitution could permit this result to happen. Even charging a case in this manner would implicate due process and due course of law concerns.

However, where the State alleges a forgery under subsection (d) or (e), it would seldom, if ever, allege the value of a property or service obtained or sought because, by definition, a prosecution under subsection (d) or (e) does not involve a purpose "to obtain or attempt to obtain a property or service." In addition, a defendant may not "attack the sufficiency or adequacy of an indictment by evidence beyond the four-corners of that indictment." *State ex rel Lykos v. Fine*, 330 S.W.3d 904, 919 (Tex. Crim. App. 2011). Therefore, the unique wording of Section 32.21 —as amended in 2017—creates a charging dilemma: any element that would increase an offense classification must be alleged in the indictment and proved beyond a reasonable doubt, but because an indictment under subsections (d) and (e) would seldom, if ever, contain the information necessary to determine the offense classification under subsection (e-1)—and because a court cannot look "beyond the four-corners of the indictment"—there would be no way for a court to determine that the offense classification in a prosecution under subsection (d) or (e) increases above what it would be under subsection (e-1). In other words, due process would require the State to allege the enhancing information, but the rules governing the sufficiency of indictments and the resolution of motions to quash would make it virtually impossible for a trial or appellate court to determine if the enhancing information has been properly alleged.

In situations where there is a conflict between a standard of review and due process, it is the standard of review that must yield, not due process. In the absence of a requirement that the State allege the defendant's purpose in forging the writing in every forgery case—not just the ones that would be misdemeanors under subsection (e-1)—it would be difficult if not impossible to prevent the type of due process violations presented in *Green* and in this case from continuing to occur. Given the potentially low punishment ranges under subsection (e-1), as demonstrated in *Green* and in this case, the risk is significant that by the time a trial or appellate court figures it out, the damage will have already been done. For this reason, due process and due course of law would require the State to allege the defendant's purpose in forging the writing in every indictment charging an offense under Section 32.21, not just those cases where the offense would be a misdemeanor under subsection (e-1). To do otherwise would effectively delegate responsibility for protecting the defendant's due process rights to the State. In no other scenario do the courts leave it to the State to ensure the defendant's due process rights are protected. Only by requiring the State to allege the defendant's purpose in forging the writing in every indictment under Section 32.21 can courts ensure that Section 32.21 does not "remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi*, 530 U.S. at 490. And, as we noted in *Green*, this conclusion is also required so that we can provide an interpretation of Section 32.21 that avoids "grave and doubtful constitutional questions." *See Jones v. United States*, 526 U.S. 227, 239 (1999); *State v. Edmond*, 933 S.W.2d 120, 124 (Tex. Crim. App. 1996).

## II.     Application to the Present Case

Accordingly, this case presents the bookend of the fact situation presented in *Green* and, although our interpretation of Section 32.21 as amended in 2017 is the same, a different—though similar—result is required.   Because Lennox did not file a motion to quash, because the indictment nominally charged a felony offense, and because a felony offense of that type exists under the statute, the trial court had subject-matter jurisdiction over the offense.  *See Kirkpatrick v. State*, 279 S.W.3d at 329.  By failing to move to quash the indictment, Lennox can neither challenge the trial court's jurisdiction nor complain that the indictment did not provide him with adequate notice of the offense with which he was charged.  *Duron*, 956 S.W.3d at 547.

Nevertheless, as in *Green*, the indictment did not allege Lennox's purpose in forging the checks in question.  On their face, the indictments purport to charge an offense of forgery under subsection (d).  However, copies of the allegedly forged checks were included in the indictment showing an aggregate amount of more than $100.00, but less than $750.00.  And, as the majority points out, the evidence at trial showed that Lennox cashed the checks at a convenience store and received money for them, which proved that Lennox's purpose in forging to checks was to obtain property, which as defined, includes money.  *See* TEX. PENAL CODE ANN. § 32.01(2)(c) ("'Property' means:  . . . a document, including money, that represents or embodies anything of value.").  This makes the offenses class B misdemeanors under subsection (e-1)(2) rather than state jail felonies under subsection (d), notwithstanding the State's failure to allege Lennox's purpose in forging the checks in question.

23

Accordingly, the indictment in this case is similar to the complaint in *Azeez*. To paraphrase from that opinion,

> On its face, the [indictment] itself was unobjectionable. It alleged a [forgery] *apparently* under the terms of [subsection (d)], but did not allege [Lennox's purpose in forging the checks.] It was only after the State's evidence disclosed that the case involved [a purpose to obtain or attempt to obtain a property or service] that a basis [for charging the jury under subsection (e-1)(2)] became manifest.

*Azeez*, 248 S.W.3d at 194. Consequently, the evidence at trial in this case "effectively put [the trial court] on notice that the appellant was being prosecuted under the wrong statutory provision" and, therefore, the trial court had an obligation to "take[] steps to assure that the [defendant was] not being prosecuted, and more critically, *punished*, under the wrong statutory provision." *Id.*[9] The question becomes what should those steps be?

At a minimum, this included an obligation to sua sponte charge the jury on the class B misdemeanor offenses of forgery under subsection (e-1)(2). In other words, the application paragraph of the charge should have read,

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about January 7, 2019, in Lamar County, Texas, the Defendant, Bobby Carl Lennox aka Bobby Carl Leanox, did then and there, with intent to defraud or harm another, [and to obtain or attempt to obtain a property or service,] pass to Nima Sherpa, a forged writing, knowing such writing

---

[9]To the extent it might be argued that, because the State nominally alleged a forgery under subsection (d), but proved a forgery under subsection (e-1)(2), there is a fatal variance between the indictment and the verdict and, therefore, Lennox is entitled to a judgment of acquittal, we point out that, although the defendant's purpose in forging a writing is an element of the offense rather than a punishment issue, it is not a separate manner and means of committing the offense of forgery. The basic elements of the offense of forgery are contained in subsection (b) and are the same for any forgery, namely, that the defendant "forges a writing with intent to defraud or harm another." TEX. PENAL CODE ANN. § 32.21(b). The separate manner and means of committing the offense are contained in the definition of "forge" in Section 32.21(a)(1). TEX. PENAL CODE ANN. § 32.21(a)(1) ("[A] to alter . . . ; (B) to issue . . . ; or (C) to possess. . . ."). The additional element of the defendant's purpose in forging the writing—which is missing from the indictments in this case—merely determines whether the forgery falls within the offense-classification scheme in subsection (e-1) or the offense-classification scheme under subsections (d) or (e).

24

to be forged, and such writing had been so made or completed that it purported to be the act of James McKnight, who did not authorize the act, and the writing was a check, then you will find the Defendant *Guilty* of the offense of Forgery as charged in Count One of the Indictment.

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict, *Not Guilty*.

The charge should also have included the definition of "property" contained in Section 32.01(2)(C). Because the trial court did not charge the jury in this manner, it erred. Because Lennox received "substantially higher enhanced sentences than the enhanced misdemeanors support," the error was egregious. Accordingly, I concur with the majority opinion reforming the trial court's judgment to reflect convictions of class B misdemeanor forgery offenses and remanding the case to the trial court for a new trial on punishment.

Ralph K. Burgess
Justice

Date Submitted: August 12, 2020
Date Decided: November 23, 2020

Publish

25