*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-09-00605-CR

Ivan William **SANCHEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-8845
Honorable George H. Godwin, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:     Catherine Stone, Chief Justice
             Sandee Bryan Marion, Justice
             Steven C. Hilbig, Justice, concurring in the judgment only

Delivered and Filed:  November 3, 2010

AFFIRMED

A jury found appellant, Ivan William Sanchez, guilty on three counts of indecency with a child by sexual contact and one count of aggravated sexual assault of a child, and assessed punishment accordingly. On appeal, appellant asserts the trial court erred by: (1) allowing Jennifer Guzman to testify as an outcry witness; (2) allowing into evidence the testimony of Angelica Newsom given at a pretrial hearing; and (3) denying his speedy trial motion. We affirm.

**OUTCRY WITNESS**

Texas Code of Criminal Procedure article 38.072 allows outcry testimony if, among other conditions, the statement describing the alleged offense was "made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense or extraneous crime, wrong, or act." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (Vernon 2005). A statement that meets the requirements of subsection 2(a)(3) is not inadmissible because of the hearsay rule if:

> (1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:
> (A) notifies the adverse party of its intention to do so;
> (B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and
> (C) provides the adverse party with a written summary of the statement;
> (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and
> (3) the child or person with a disability testifies or is available to testify at the proceeding in court or in any other manner provided by law.

*Id.* § 2(b).

The trial court has broad discretion in determining who the proper outcry witness is. *Chapman v. State*, 150 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Absent a clear abuse of discretion, we will not disturb the trial court's ruling. *Id.* A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id.*

Here, on September 11, 2007, the State filed a pretrial notice designating Jennifer Guzman as its outcry witness. Almost two years later, the State filed a pretrial notice designating Angelica Newsome and Terry Melendez as its outcry witnesses.[1] In the second notice, the State stated that its review of the complainant's counseling records revealed Guzman was not the first

---

[1] Melendez did not testify at trial.

adult told of the offense. Instead, Newsome and Melendez were the first adults to whom complainant made her outcry.

On May 20, 2009, a pretrial hearing was held during which the complainant testified about the abuse and Newsome testified about the outcry statement made to her by the complainant. At the conclusion of the hearing, the prosecutor stated as follows:

> Your Honor, that is all the witnesses the state has. The other designated outcry witness originally was . . . Jennifer Guzman. Jennifer Guzman, who the complainant has testified she told subsequent to Ms. Newsome, is the witness that we are seeking to attach down in Atascosa County right now. As I checked this morning, the sheriffs there still had not been able to find her. However, based on the testimony, the state would submit that the proper outcry witness is Ms. Newsome.

The trial court agreed that Newsome was the proper outcry witness. However, Newsome did not testify at trial because she was unavailable.[2] Instead, at trial, the State called Guzman to the stand. At the start of her testimony, the trial court admitted into evidence, over appellant's objection, two pages of Guzman's hand-written notes, which she identified as notes taken from her calendar on which she claims she writes everything. Three of the hand-written entries referenced the assault. The State then asked Guzman whether "there ever [came] a time that [the complainant] told you she had been hurt by anyone?" The trial court overruled appellant's objection that the question elicited hearsay and the State was "trying to back-door this outcry." Guzman answered "yes" and the State proceeded to elicit details of the outcry. On appeal, appellant asserts the trial court erred in allowing Guzman to testify as an outcry witness both in her testimony and through the hand-written notes.

---

[2] Over appellant's objection, Newsome's pretrial testimony was read into evidence. This objection is the subject of the next issue on appeal.

### A.    Proper Outcry Witness

Appellant argues Guzman was not a proper outcry witness because she was not the first person, eighteen years or older, to whom the complainant made a detailed statement about the offense.  Although not argued at the pretrial hearing, the State counters that because appellant was charged with multiple counts of aggravated sexual assault of a child and indecency with a child, more than one outcry witness was proper.

Article 38.072 contemplates allowing the first person to whom the child described the offense in some discernible manner to testify about the statements the child made.  *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).  Because of the way in which the statute is written, an outcry witness is not person-specific; it is event-specific.  Therefore, the State is permitted to call multiple outcry witnesses if each individual outcry concerns an event different from the other outcry(ies).  *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd).  Before more than one outcry witness may testify, however, the outcry must be about different events, and not simply a repetition of the same event as related by the victim to different individuals.  *Id.*  The statement must be one that in some discernible manner describes the alleged offense; it must be more than just words generally alluding that something in the area of child abuse was going on.  *See Garcia*, 792 S.W.3 at 91; *Broderick*, 35 S.W.3d at 73.  Here, the State contends Guzman testified to two events different from the event described in Newsome's pretrial testimony.

The State first argues Guzman testified about an act of indecency by sexual contact, which is an offense separate from the aggravated sexual assault about which Newsome testified.  The State also argues the complainant's testimony that she ran away because the abuse had stopped but was beginning again, suggests "that the sexual assault Guzman testified to was a

separate sexual assault than the one Newsome testified about." We therefore compare Guzman's testimony with Newsome's testimony to determine whether the complainant's outcry to Guzman was different from her outcry to Newsome. The entirety of Guzman's testimony about the outcry is as follows:

> Q.   What did she [the complainant] tell you.
> A.   That he had been touching her.
> Q.   What did she —
> A.   I said, touching you on top of your clothes or under? She said no.
> Q.   Did she expound?
> A.   I said, you mean sex; he's been going in you? She said yeah.
> Q.   Did she tell you how long that had been going on?
> A.   She said it stopped and it was going to start again. That's why she ran away.

The entirety of Newsome's testimony about the outcry is as follows:

> Q.   Okay. In that statement what did [the complainant] tell you that was bothering her?
> A.   She told me [that appellant] had picked her up [sic] took her into the other room and had sexually assaulted her.
> Q.   Did she get more specific about?
> A.   She said he put his penis in her.
>
> [on cross-examination]
>
> Q.   [W]hat did [the complainant] actually say to you?
> A.   She said that [appellant] picked her up, took her to the other room, she actually told me all her brothers and sisters were — she was sleeping with her brothers and sisters in the same room. She was picked up out of that room and taken to another room and raped.
> Q.   Okay. And when she said raped that —
> A.   She said he got on top of her and put his penis in her.
>
> . . .
>
> Q.   That was the only sexual act that she mentioned?
> A.   That's all that I was told. Yes.

We conclude the complainant's testimony that she ran away because the abuse was "going to," but perhaps had not yet, "started again" does not in any discernable manner describe

an actual offense. Therefore, we do not agree with the State that this testimony is about an instance of sexual assault separate from the one about which Newsome testified. Nor do we agree with the State's argument that Guzman also testified to a separate instance of indecency by sexual contact. Guzman's testimony that the complainant said "no" when asked about the touching and then elaborated by saying appellant penetrated her, indicates any touching was incident to the sexual assault and not a separate and distinct act. *See Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding that, under facts of the case, offense of indecency with a child by exposure was committed as part of aggravated assault offense; thus, indecency offense not subject to prosecution as a separate offense).

Based on this record, we conclude the State did not establish that the outcry to Guzman was about different events, as opposed to a repetition of the same event to different individuals. Therefore, Guzman was not a proper outcry witness and the trial court erred in allowing her to testify and by allowing her calendar notes into evidence.[3]

**B.      Harm**

Although the trial court erred by allowing Guzman to testify, that does not end our review. We must next consider whether the error "had a substantial and injurious effect or influence in determining the jury's verdict." *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.

---

[3] On appeal, the State offers an alternative argument in support of the admission of Guzman's testimony. The State contends her testimony was properly admissible as a prior consistent statement. According to the State, Guzman's testimony was offered to refute the appellant's argument that the complainant fabricated her statements because she was angry with the appellant because she discovered he was not her biological father and he had too many rules. The State is correct that the content, tone, and tenor of defense cross-examination may "open the door to the admissibility of a prior consistent statement by an express or implied suggestion that the witness is fabricating her testimony in some relevant respect." *See Hammons v. State*, 239 S.W.3d 798, 808 (Tex. Crim. App. 2007). However, one of the requirements that must be met for a prior consistent statement to be admissible is that "the prior consistent statement must be made *prior* to the time that the supposed motive to falsify arose." *Id.* at 804 (emphasis added); *see also Martinez v. State*, 276 S.W.3d 75, 82 (Tex. App.—San Antonio 2008, pet. ref'd). At the pretrial hearing, the complainant said appellant told her he was not her biological father when she was thirteen years old. She made her outcry to Guzman when she was either fourteen or fifteen years old. Therefore, as the proponent of Guzman's testimony, the State failed to establish that the complainant made her outcry to Guzman before her "supposed motive to falsify arose." Because we determine Guzman was not the proper outcry witness, we need not address appellant's other complainants in regard to Guzman.

App. 1997). A conviction should not be overturned for non-constitutional error, such as here, if this court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The improper admission of evidence is not harmful if the same or similar evidence is admitted without objection at another point in the trial. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

In this case, several witnesses other than Guzman testified without objection about the complainant's outcry. Annette Santos, the sexual assault nurse examiner, testified she saw the complainant for the first time in December 2005, when the complainant was referred to her by the San Antonio Police Department. Jennifer Guzman accompanied the complainant. Santos read aloud from her report, which was also admitted into evidence, the statements the complainant made to her. The complainant told Santos the abuse started when she was either nine or ten years old, and consisted of appellant touching her breasts, her "front private area," and oral and vaginal penetration with his fingers and penis.

The complainant also testified at trial. She said appellant came into her bedroom, put his hands under her nightshirt and felt her breasts, but she never told anyone because she was afraid. She said the touching progressed to appellant trying to pull down her pants and put his fingers inside her vagina. She said she tried to avoid appellant by sleeping with her two brothers, but appellant would come into the bedroom and carry her into the living room where he would take off her clothes, "hold [her] down and just like rape" her, and by "rape" she meant putting his penis inside her. Once he forced her to put her mouth on his penis.

The defense called Cheryl Thiery, a CPS investigator, to testify about her contact with the family. She said she first contacted the family in October 2005 for the purpose of investigating a

claim that appellant had hit the complainant's fifteen-year-old brother. After the complainant and her brother went to live with their mother's cousin (Jennifer Guzman), the complainant made her December 2005 outcry to Guzman, who reported the allegation to the police who in turn reported the outcry to CPS. Although Thiery did not testify about the contents of her conversation with the complainant, she stated her investigation of the sexual assault outcry led to a "reason to believe" disposition.

After a review of the record, we have a fair assurance that the error did not influence the jury, or had but a slight effect, because the complainant and the sexual assault nurse examiner testified about the same matter, in more detail, and without objection.[4] *See Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (because the outcry witness's testimony included same facts that were admitted into evidence without objection, trial court's error in admitting outcry witness's testimony was harmless); *Thomas v. State*, 1 S.W.3d 138, 142 (Tex. App.—Texarkana 1999, pet. ref'd) (same).

## NEWSOME'S TESTIMONY

In his second issue, appellant asserts his constitutional right to confront witnesses was violated when the trial court allowed the State to read into evidence the testimony Newsome gave at the May 20, 2009 pretrial hearing during which Newsome testified about the outcry statement made to her.

"The admission of a hearsay statement made by a non-testifying declarant violates the Sixth Amendment if the statement was testimonial, and the defendant lacked a prior opportunity for cross-examination." *Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006). The Texas Rules of Evidence provide as an exception to hearsay in criminal cases, "testimony given as a

---

[4] The jury also heard Newsome's pretrial testimony about the outcry. Appellant objected to this testimony, but as discussed further under appellant's second issue, we conclude the trial court did not err in admitting Newsome's testimony.

witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." TEX. R. EVID. 804(b)(1). Here, there is no dispute that Newsome's pretrial testimony about what the complainant told her was "testimonial," and, at trial, the court ruled Newsome to be unavailable. Therefore, the issue is whether appellant had an "opportunity and similar motive to develop [Newsome's] testimony by direct, cross, or redirect examination" at the pretrial hearing.

In Texas, there is no bright-line rule that states pretrial hearings do not provide an adequate opportunity to cross-examine sufficient to satisfy confrontation clause requirements. Rule 804(b)(1) does not require that in order for prior testimony to be admitted as an exception to the hearsay rule the opponent of the evidence have had an identical motive to challenge the testimony at the prior proceeding as he now has at trial. *Coffin v. State*, 885 S.W.2d 140, 147 (Tex. Crim. App. 1994). Instead, the rule requires only that he have had a similar motive. *Id.* Neither the form of the proceeding, the theory of the case, nor the nature of the relief sought need be the same. *Id.* Only the particular issue about which the testimony was first offered must be substantially similar to the issue offered in the current action. *Id.*

On appeal, appellant contends he was not given the opportunity at trial to "flesh out" any potential bias Newsome may have had, to question Newsome's ability to adequately recall events, or to expand on Newsome's admission at the pretrial hearing that she had "seizures and certain things [were] kind of foggy." The purpose of a hearing conducted pursuant to article 38.072 is to determine whether the outcry "statement is reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). Appellant contends the purpose of the pretrial hearing is different from cross-examination for purposes of

the guilt/innocence stage of trial. Therefore, appellant concludes, he had no motive at the pretrial hearing to question Newsome about her bias, her recall, or her seizures.

One indicia of whether the child's outcry is reliable is whether evidence exists of prior prompting or manipulation by adults. *Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd). Therefore, at the pretrial hearing, appellant had a basis for exploring whether Newsome held any bias against him that would have caused her to prompt or manipulate the complainant. Also, because the outcry statement must be one that in some discernible manner describes the alleged offense, appellant had a basis for exploring Newsome's ability to recall the time, content, and circumstances of the outcry. In fact, at the pretrial hearing, appellant's counsel conducted an extensive cross-examination of Newsome about the timing of the outcry and the specific words the complainant used in describing the offense, and Newsome's pretrial testimony was read at trial in its entirety, including counsel's cross-examination. We conclude appellant's motive to cross-examine Newsome at the pretrial hearing was similar to his stated motive for cross-examining her at trial. Therefore, appellant was not denied his constitutional right to confront a witness at trial.

### SPEEDY TRIAL

Finally, appellant asserts the trial court erred in denying his motion for speedy trial. To determine whether the State violated appellant's right to a speedy trial under the state or federal constitution, we weigh and balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right; and (4) the prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (creating balancing test for reviewing speedy trial claims under federal constitution); *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008) (although speedy trial right under Texas Constitution exists independently of federal guarantee, claims of

denial of State speedy trial right are analyzed under same four *Barker* factors). Once the *Barker* test is triggered, we analyze the speedy trial claim by first weighing the strength of the *Barker* factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Cantu*, 253 S.W.3d at 281. None of the *Barker* factors is a necessary or sufficient condition to finding a speedy trial violation. *Id.* Rather, the factors are related and should be evaluated in conjunction with any other relevant considerations. *Id.* In reviewing the trial court's ruling, we review the legal components de novo and review the factual components for an abuse of discretion. *See id.* at 282.

Appellant was indicted on October 18, 2006 and trial commenced on June 22, 2009. Because the delay was more than two years, further analysis under *Barker* is triggered. As to the reasons for the delay, the State bears the initial burden of providing a justification for the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). At the speedy trial hearing, the State offered no explanation, nor any justification, for the delay. However, the trial court was aware that continuances had been sought by both sides and "copious pretrial work" had been done. Therefore, this factor weighs only slightly against the State. Appellant did not assert his right to a speedy trial until May 15, 2009 and the hearing was held on June 22, 2009, the day of trial. Appellant concedes on appeal this factor does not weigh in his favor. Lastly, this court is to consider whether appellant was prejudiced by the delay. Appellant was not incarcerated pending trial, and his only testimony at the speedy trial hearing was that the charges weighed heavily on his mind and made finding work difficult for him. However, he offered the court no estimation of his financial losses or any other evidence by which the court could quantify his loss. Because appellant's showing of prejudice was minimal, this factor should be weighed in favor of the State. On balance, we conclude appellant's right to a speedy trial was not violated.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice

Publish